UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
VIVIENNE CULWICK as Administratrix
of the Estate of STEVEN ELIOT WOOD,

                        Plaintiff,

             -against-

ANDRAE E. WOOD, a/k/a ANDRAE E.
KIPIN,

                       Defendant.
--------------------------------------------------------X
**POLLAK**, Chief United States Magistrate Judge:

**REPORT AND RECOMMENDATION**
15 CV 5868 (ENV) (CLP)

On October 13, 2015, plaintiff Vivienne Culwick, as administratrix of the Estate of

Steven Wood, commenced this action against defendant Andrae E. Wood, a/k/a Andrae E. Kipin,

seeking damages arising from the distribution of proceeds from decedent Steven Woods' annuity

fund and pension plan. Currently pending before this Court on referral from the Honorable Eric

N. Vitaliano is plaintiff's motion for summary judgment on the issue of damages, including

prejudgment and post-judgment interest and attorney's fees.[1]

For the reasons set forth below, it is respectfully recommended that plaintiff be awarded

$908,994.37. This figure includes a damage award of $574,901.24, representing the decedent's

annuity benefit, an award of $103,319.43, representing decedent's pension benefits owed to

plaintiff, plus an award of $139,255.72 in accumulated interest on the decedent's annuity benefit.

Also included in the total damages award is an award of attorney's fees in the amount of $89,616

and costs of $1,901.98. Plaintiff is also entitled to post-judgment interest under 28 U.S.C. §

1961, should any accrue after entry of judgment.

---

[1] The referral for a calculation of damages was originally made to the Honorable Steven M. Gold. Upon his retirement, the case was reassigned to the undersigned Magistrate Judge.

As explained below, the Court is not recommending an award of prejudgment interest on the pension benefits at this time, pending a further submission from plaintiff. (See discussion infra subpart (B)(5)).

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The facts underlying the parties' dispute are set forth in detail in the Memorandum and Order issued by the Honorable Eric N. Vitaliano on May 18, 2019, granting summary judgment in favor of plaintiff on her claim for breach of contract. (Mem. & Order[2] at 33). For purposes of this motion for damages, the Court sets forth only the relevant facts necessary to put into context the plaintiff's claim for damages, including interest, and attorney's fees.

Defendant Andrae Wood was married to decedent Steven Wood in 1984. (Id. at 1). At some point during their marriage, Steven Wood, a member of the International Alliance of Theatrical Stage Employees, Local Union No. 1 (the "Union"), designated Andrae as the primary beneficiary of certain annuity and pension benefits to which he was entitled as a union member. (Id. at 2). He designated his father as the contingent beneficiary. (Id.)

In 1996, Steven became involved with Vivienne Culwick and, in April 2006, he and Andrae Wood divorced. (Id. at 1-2). As part of the divorce, the Woods executed a Property Settlement Agreement that provided, *inter alia*, that "the Wife agrees that the Husband shall otherwise retain all pensions and annuities acquired by him at any time, including during the marriage. . . . The Wife waives any claims that she might have in and to these benefits including the right to be named as a survivor beneficiary." (Id. at 2 (quoting Property Settlement

---

[2] Citations to "Mem. & Order" refer to the Memorandum and Order issued by Judge Vitaliano on May 18, 2019.

Agreement, Ex. G to Proscia Decl.[3])).  It is undisputed that Steven Wood never altered the beneficiary designations under his annuity and pension plans.  (Id. at 3).

After Steven Wood died suddenly without a will in December 2012, a representative of the annuity and pension plan contacted Andrae Wood as the listed primary beneficiary, and she completed the forms necessary to transfer the benefits to her name.  (Id.)  On February 22, 2013, Andrae Wood received distribution of the decedent's annuity (the "Annuity"), and she began receiving monthly payments of his pension benefits beginning in April 2013.  (Union Letter, Ex. J to Pl.'s Decl.;[4] Pension Check Payments Detail Report, Ex. K to Pl.'s Decl.).  Despite demands from Steven's Estate to return the benefits in accordance with the terms of the Property Settlement Agreement, defendant refused.  (Mem. & Order at 3).  Subsequently, Culwick, as the administratrix of the Estate, commenced this action alleging claims for breach of contract, conversion, unjust enrichment, and seeking a declaratory judgment.  (Id. at 1, 3).

In 2016, while settlement negotiations were ongoing, plaintiff learned that Andrae had transferred the Annuity funds that she had received into a Charles Schwab & Company account.  (R&R[5] at 2).  The parties thereafter executed a stipulation, styled as a preliminary injunction, in which Wood agreed not to take any distributions, make any withdrawals, or transfer any funds from the Annuity account beginning on June 28, 2016 while settlement discussions continued. (Id. at 2-3).  The stipulated injunction was extended until October 31, 2016, at which time plaintiff moved for a preliminary injunction.  (Id. at 3).  The district court then extended the

---

[3] Citations to "Proscia Decl." refer to the Declaration of Anthony J. Proscia, dated December 22, 2017, submitted in connection with the Defendant's Motion for Summary Judgment, ECF No. 94-1.  Property Settlement Agreement, Ex. G to Proscia Decl. is ECF No. 94-8.

[4] Citations to "Pl.'s Decl." refer to the Declaration of Perry S. Friedman, dated August 19, 2020, submitted in connection with plaintiff's Second Motion for Summary Judgment, ECF No. 133-2.  Union Letter, Ex. J to Pl.'s Decl. is ECF No. 133-12.  Pension Check Payments Detail Report, Ex. K to Pl.'s Decl. is ECF No. 133-13.

[5] Citations to "R&R" refer to the Report and Recommendation of the Honorable Steven M. Gold, dated April 14, 2020, ECF No. 125.  The Report and Recommendation was adopted by the district court on May 21, 2020.

stipulated injunction pending a decision on plaintiff's motion for preliminary injunction (Order Extending the Stipulated Injunction, ECF No. 30), which motion was subsequently denied on May 21, 2020.  (See Order Adopting R&R, ECF No. 125).

In February 2017, while the motion for a preliminary injunction was pending and the parties were continuing their efforts at settlement, the decedent's father, who had been designated as the contingent beneficiary on the Annuity and pension plan, assigned his claims against Andrae to the Estate.  (R&R at 4).  Thereafter, the parties cross-moved for summary judgment.  Judge Vitaliano issued his decision on May 18, 2019, awarding summary judgment to plaintiff on her breach of contract claim only.  (Mem. & Order at 33).  The District Court concluded that Andrae had "violated the terms of the property settlement agreement" and referred to the Magistrate Judge the issues of 1) contract damages, including the calculation of prejudgment and post-judgment interest; and 2) whether plaintiff was entitled to attorney's fees, and if so, in what amount.  (Id. at 26-29, 33).

On August 19, 2020, plaintiff submitted a motion for summary judgment on the issue of damages, interest, and attorney's fees, along with counsel's Declaration in support of attorney's fees, and the Affidavit of Certified Public Accountant Steven Delsanto, dated August 10, 2020, setting forth his calculations of prejudgment interest owed pursuant to New Jersey Court Rule 4:42-11.

On October 23, 2020, defendant submitted papers in opposition to the motion for summary judgment, arguing, inter alia, that plaintiff mistakenly calculated compound interest instead of simple interest for both the Annuity fund and pension payments and employed the wrong interest rates when calculating prejudgment interest on the pension benefits; that the interest should be tolled during the period from August 28, 2019 through the district court's

4

order referring the plaintiff's motion to the Magistrate Judge for consideration; that the father, and as a consequence, plaintiff as his assignee, was not entitled to attorney's fees under the Property Settlement Agreement; and, even if fees and costs should be awarded to plaintiff, the amount sought by plaintiff's counsel was unreasonable.  Plaintiff responded to these arguments in a Reply Memorandum, dated November 9, 2020, to which plaintiff attached supplementary exhibits.

Having considered the papers submitted in connection with this motion for summary judgment and the prior proceedings in this case, the Court respectfully recommends that plaintiff be awarded prejudgment interest, attorney's fees, and costs in the total amount of $908,994.37.

<u>DISCUSSION</u>

A.  <u>Summary Judgment Standard</u>

Since plaintiff is moving for summary judgment on the issue of damages, plaintiff has the burden of establishing that no genuine issue of material fact is in dispute and that she is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>Thompson v. Gjivoje</u>, 896 F.2d 716, 720 (2d Cir. 1990).  In determining whether there is an issue of fact that requires a trial, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'"  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986) (quoting <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)); <u>see also Richardson v. New York State Dep't of Corr. Serv.</u>, 180 F.3d 426, 436 (2d Cir. 1999) (stating that "[w]hen considering a motion for summary judgment the court must draw all factual inferences and resolve all ambiguities in favor of the nonmoving party") (<u>abrogated on other grounds by Kessler v. Westchester Cnty. Dep't of Soc. Servs.</u>, 461 F.3d 199 (2d Cir. 2006)).

Once the moving party discharges its burden of proof under Rule 56(c), the party

opposing summary judgment "has the burden of coming forward with 'specific facts showing

that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858

(S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)).  The Rule provides that, in moving for summary

judgment or responding to such a motion, "[a] party asserting that a fact cannot be or is

genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  "An affidavit or declaration

used to support or oppose a [summary judgment] motion must be made on personal knowledge,

set out facts that would be admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

B.  Contract Damages

In his Memorandum and Order dated May 18, 2019, Judge Vitaliano found that

defendant breached the Property Settlement Agreement by accepting decedent Steven Wood's

Annuity.  (Mem. & Order at 17-26).  According to the documents provided by the Union, the

decedent's Annuity was distributed to defendant on February 22, 2013. (Delsanto Aff.[6] ¶ 2; Pl.'s

Mem. at 9; Union Letter, Ex. J to Pl.'s Decl.).  A letter provided by the Union, dated July 30,

2015, states that the value of the Annuity on the day after the decedent's death was $564,864.61.

(Pl.'s Mem.[7] at 9; Union Letter, Ex. J to Pl.'s Decl.).  By the time the Annuity was distributed to

defendant, the Annuity had a value of $574,901.24.  (Pl.'s Mem. at 9-10; Union Letter, Ex. J to

---

[6] Citations to "Delsanto Aff." refer to the Affidavit of Steven Delsanto, certified public accountant, dated August 10, 2020.  (ECF No. 133-17).

[7] Citations to "Pl.'s Mem." refer to the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, dated August 19, 2020.  (ECF No. 133-27).

Pl.'s Decl.).  Accordingly, plaintiff is entitled to an award of $574,901.24, representing the value of Steven Wood's Annuity as of the date it was distributed to the defendant, Andrae Wood.

In addition to determining that the defendant's acceptance of the Annuity was in breach of the Property Settlement Agreement, the district court found that defendant had relinquished any right she might have had to the decedent's pension benefits. (Mem. & Order at 17-26). According to documents obtained from the Union, defendant received her first payment of the decedent's pension benefits on April 1, 2013.  (Pl.'s Mem. at 11; Pension Check Payments Detail Report, Ex. K to Pl.'s Decl.).  Since the decedent passed away at the end of December 2012, that first payment included the benefits from January 2013 through March 2013.  (Pl.'s Mem. at 11).

In accordance with the district court's finding that the decedent's father was an intended third-party beneficiary of the Property Settlement Agreement and therefore entitled to enforce that Agreement, the father's expectation "represents the proper measure of damages."  (Mem. & Order at 27).  Since the father was named as the contingent beneficiary and entitled to receive the decedent's pension benefits, the court concluded that those benefits accrued only until the father's death.[8]  (Id.; see also Delsanto Aff. ¶¶ 2, 7).  Given that the decedent's father passed away in March 2017, and the decedent's pension benefits were paid to the defendant beginning on April 1, 2013, plaintiff is entitled to an award of the total amount of pension benefits paid to defendant up to the date of the decedent's father's death.  Based on an accounting of the monthly pension payments paid to defendant during this period, as provided by the Union (see Pension

---

[8] In the Memorandum and Order, the district court noted that although decedent's father predeceased defendant and defendant may have continued to collect pension benefits after the father's death, the benefits that she received would not be owed to plaintiff as contract damages because the decedent's father was not entitled to receive them after his death. (Mem. & Order at 27-28).  The court noted that it was not deciding the question of whether the ERISA plan could recover any benefits paid to defendant after the father's death because the question was not before the court.  (Id.)  Accordingly, this Court has limited its analysis of prejudgment interest on the pension benefits paid to defendant during the period up to the father's death in accordance with the district court's Memorandum and Order.

Check Payments Detail Report, Ex. K to Pl.'s Decl.), the defendant received a total of $103,319.43 in pension benefits.  Having evaluated the Union's records and verified plaintiff's calculations, this Court finds that plaintiff is entitled to receive a total of $103,319.43 from defendant as reimbursement of the pension benefits paid during the relevant period.

Accordingly, it is respectfully recommended that defendant be Ordered to pay to plaintiff $574,901.24, representing the amount of the Annuity paid to defendant, plus $103,319.43, representing the amount of pension benefits paid out to plaintiff up until March 2017, for a total of $678,220.67.

### C.  Prejudgment Interest

#### 1.  Choice of Law

In contract cases, the issue of prejudgment interest is an issue of substantive law. Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999) (citing Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir.1998)); Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co., 239 F.3d 179, 186 (2d Cir. 2001); Maxalbumus Inc. v. Direct Movers LLC, No. 18 CV 3450, 2020 WL 8617499, at *4 (E.D.N.Y. Dec. 4, 2020), report and recommendation adopted, No. 18 CV 3450, 2021 WL 681384 (E.D.N.Y. Feb. 22, 2021); Foresco Co. v. Oh, 337 F. Supp. 3d 304, 306 (S.D.N.Y. 2018).  "Federal courts exercising diversity jurisdiction must apply the choice of law rules of the forum state, here New York, to determine which state's substantive law applies."  Schwimmer v. Allstate Ins. Co., 176 F.3d at 650 (citing 28 U.S.C. § 1652; Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Erie R.R. v. Tompkins, 304 U.S. 64, 74-77 (1938); Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1538 (2d Cir.) cert. denied, 522 U.S. 864 (1997)).

"Under New York choice of law rules, the law of the jurisdiction that determines liability governs the award of prejudgment interest." Id. (citing Entron, Inc. v. Affiliated FM Insurance Co., 749 F.2d 127, 131 (2d Cir. 1984)); see also; Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 147 (2d Cir. 2008); Patch v. Stanley Works (Stanley Chemical Company Division), 448 F.2d 483, 494 n.18 (2d Cir. 1971) (noting that there is a "consistent line" of decisions holding that under New York choice of law principles "allowance of prejudgment interest is controlled by the rule of the jurisdiction whose law determines liability"); Linza v. Outsource Receivables Mgmt., Inc., No. 17 CV 1324, 2021 WL 2209408, at *7 (W.D.N.Y. Feb. 4, 2021).

Accordingly, given the District Court's holding that New Jersey law governed plaintiff's breach of contract claim (Mem. & Order at 28), "under New York choice of law principles, the allowance of prejudgment interest is controlled by the law of New Jersey, whose law determined liability on the main claim." Entron, Inc. v. Affiliated FM Ins. Co., 749 F.2d at 131 (citing Patch v. Stanley Works (Stanley Chemical Company Division), 448 F.2d at 494 n.18).

2. Prejudgment Interest Under New Jersey Law

Under New Jersey law, an award of prejudgment interest for breach of contract claims "is subject to the discretion of the trial court." Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 284 (3d Cir. 1995) (citing Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478 (1988). The "primary consideration" in determining a prejudgment interest amount for a breach of contract claim is the cost that the plaintiff incurred because of lack of access to the amount in question. See Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 390, 982 A.2d 420, 430-31 (2009) (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 506, 323 A.2d 495 (1974). Prejudgment interest is awarded "'to indemnify the claimant for the loss of what moneys due him would presumably have earned if the payment had not been delayed.'" Cooper

9

Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d at 284 (quoting Ellmex Constr. Co. v. Republic Ins. Co. of America, 202 N.J. Super. 195, 212-13, 494 A.2d 339, 348-49 (App. Div. 1985)).  In this case, because plaintiff was deprived of the use of the Annuity and pension benefits paid to defendant, an award of prejudgment interest is appropriate to make the plaintiff whole.[9]

  3.  <u>New Jersey Interest Rates</u>

   The Court must also determine the rate at which prejudgment interest should be awarded. New Jersey case law makes it clear that the rate to be applied in the context of a breach of contract claim is within the discretion of the court.  <u>See</u> <u>Litton Indus., Inc. v. IMO Indus., Inc.</u>, 200 N.J. at 390, 982 A.2d at 430; <u>Spencer v. Long Valley Inn, Inc.</u>, No.  MRS L-2183-96, 2005 WL 3488033, at *6 (N.J. Super. Ct. App. Div. Dec. 22, 2005).  In accordance with the court's Order that "[d]amages shall include prejudgment and postjudgment interest" and the request that this Court provide a report and recommendation "on the applicable interest rate and the amount of prejudgment interest owed" (Mem. & Order at 28-29), plaintiff has submitted the Affidavit of a certified public accountant, Steven Delsanto, who relied on New Jersey Court Rule 4:42-11 in calculating prejudgment interest.

   According to New Jersey Court Rule 4:42-11(a) and (b), prejudgment interest on an unpaid money judgment should be calculated as "simple interest."  This conforms with the Supreme Court of New Jersey's holding that compound interest is disfavored because it "unduly hastens the accumulation of debt" and is thus "unfairly 'harsh and oppressive.'"  <u>Henderson v. Camden Cty. Mun. Util. Auth.</u>, 176 N.J. 554, 559–60, 826 A.2d 615, 619 (2003) (quoting

---

[9] Defendant claims that the interest relating to the Annuity should be tolled because defendant lacked access to those funds after the parties' June 28, 2016 stipulation that defendant would leave them untouched during settlement negotiations.  This Court rejects defendant's tolling argument, as discussed <u>infra</u>.

Abramowitz v. Washington Cemetery Ass'n, 139 N.J. Eq. 293, 296, 51 A.2d 461 (Ch. 1947));

see also W.R. Huff Asset Mgmt. Co., L.L.C. v. William Soroka 1989 Trust, No. 04 CV 3093,

2009 WL 2436692, at *10 (D.N.J. Aug. 6, 2009).

Under New Jersey Court Rule 4:42-11(a)(ii), the annual rate of interest applied to money

judgments "shall equal the average rate of return, to the nearest whole or one-half percent"

according to a schedule produced by the New Jersey State Department of the Treasury, "but the

rate shall be not less than 0.25%." The New Jersey state court system periodically publishes a

chart detailing the interest rates dictated by New Jersey Court Rule 4:42-11. See New Jersey

Courts, Post-Judgment and Pre-Judgment Interest Rates (Oct. 21, 2020),

njcourts.gov/courts/assets/civil/postprejudgementrates.pdf. In addition, New Jersey Court Rule

4:42-11(a)(iii) provides that, where the judgment exceeds the Special Civil Part monetary limit

of $15,000, then an additional 2% per annum will be added to any prejudgment interest

calculated at the rates provided in Rule 4:42-11(a)(ii).

The published rates incorporated into Rule 4:42-11 are as follows for the relevant years:

| Year | Cash Management Fund Rate | With 2% Adjustment |
|------|--------------------------|--------------------|
| 2013 | 0.25% | 2.25% |
| 2014 | 0.25% | 2.25% |
| 2015 | 0.25% | 2.25% |
| 2016 | 0.25% | 2.25% |
| 2017 | 0.50% | 2.5% |
| 2018 | 0.50% | 2.5% |
| 2019 | 1.5% | 3.5% |
| 2020 | 2.50% | 4.5% |
| 2021 | 1.5% | 3.5% |

Plaintiff's accountant relied on these rates when completing his calculations, although he did not include the rates for 2021, because he only calculated accrued interest up to July 2020. (See Delsanto Aff., Ex. 1).[10]

4. Plaintiff's Initial Calculations

a) Prejudgment Interest Owed on the Annuity

Plaintiff contends that in calculating the prejudgment interest owed on the Annuity paid to defendant, the Court should use as the starting date February 2013, the date the breach of the Property Settlement Agreement occurred, and that interest should be calculated to the present.

---

[10] In a footnote to his Affidavit, Mr. Delsanto indicates that he calculated interest up to July 2020 based on instructions from plaintiff and that the explanation for the chosen dates is allegedly set forth in plaintiff's Memorandum of Law. (Id. at 2 n.2, 4). However, there does not appear to be an explanation for the choice of July 2020 as the end date, but this Court presumes that it stems from the date of the Memorandum itself, which was dated August 19, 2020.

(Pl.'s Mem. at 10, 12 (citing <u>Munich Reinsurance America Inc. v. Tower Ins. Co. of N.Y.</u>, 9 CV 2598, WL 1018799 (D.N.J. Mar. 26, 2012))).  Using the value of the Annuity as of the date of the breach in February 2013, which was $574,901.24, and based on the calculations provided by Mr. Delsanto, plaintiff contends that the total prejudgment interest owed on the Annuity from February 2013 until July 2020 was $125,086.85. (Pl.'s Mem. at 12; Delsanto Aff. ¶ 4).  Plaintiff contends that when this interest is combined with the $574,901.24 total value of the Annuity received by defendant, defendant owes a total of $699,988.09 in damages on the Annuity alone. (Delsanto Aff. ¶ 5).

b) <u>Prejudgment Interest Owed on the Pension Payments</u>

In calculating the prejudgment interest owed on the pension payments, plaintiff again asserts that the measure of damages should run from the date that defendant received her first pension benefit payments on April 1, 2013 and continue until March 1, 2017 when the decedent's father died. (Pl.'s Mem. at 13; Exs. K and L).  Using New Jersey interest rates, Mr. Delsanto calculated the annual interest on the pension benefits paid from April 2013 until the decedent's father's death in March 2017, concluding that, in total, defendant owed $16,976.29 in prejudgment interest on the $103,319.43 in pension benefits paid out to defendant.  (Delsanto Aff. ¶ 8).

5. <u>Defendant's Objections to the Calculations</u>

In opposing plaintiff's request for prejudgment interest, defendant points out that in calculating prejudgment interest, the plaintiff's accountant used compound, rather than simple interest as required by New Jersey Court Rule 4:42-11 and New Jersey common law.  (Def.'s

Mem.[11] at 1-2). Specifically, defendant notes that, in calculating interest on the Annuity, Mr. Delsanto added the accrued interest to the opening balance number each year and then calculated the interest owed using that combined total. (Id. at 2). As defendant notes, "[t]hat is the very definition of compound interest." (Id.) The same flaw appears in connection with the calculation of interest owed on the pension payments. (Id.) Defendant argues that in the absence of a showing of "unusual circumstances," plaintiff's request for compound prejudgment interest should be denied. (Id.)

In her Reply Memorandum of Law, plaintiff concedes that Mr. Delsanto "did in fact make errors in his calculations of interest" and claims that he has now recalculated the interest using simple interest. (Pl.'s Reply at 1). Mr. Delsanto filed a new Affidavit, sworn to on November 5, 2020, in which he recalculated the interest owed on the Annuity as $124,620.93 and on the pension benefits as $14,185.76 using the additional 2% interest rates. (Delsanto Second Aff.).

6. The Court's Analysis

Having considered the arguments of both parties and reviewed the calculations, the Court recommends an award of prejudgment interest as set forth below.

a) Prejudgment Interest on the Annuity Award

Although unacknowledged by either party, New Jersey Court Rule 4:42–11(b) only expressly applies to tort actions. Rather than being dictated by statute, "'the award of prejudgment interest on contract and equitable claims is based on equitable principles.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. at 390, 982 A.2d at 430 (quoting County of Essex v.

---

[11] Citations to "Def.'s Mem." refers to the Memorandum of Law Submitted on Behalf of Defendant Andrae E. Wood, a/k/a Andrae E. Kipin, in Opposition to Plaintiff's Second Motion for Summary Judgment, dated Oct. 23, 2020, ECF No. 133-30.

14

First Union Nat'l Bank, 186 N.J. at 61, 891 A.2d 600).  When determining prejudgment interest under New Jersey law, however, the interest rates provided by New Jersey Court Rule 4:42-11 are "typically . . . an 'appropriate benchmark' for pre-judgment interest" regardless of the nature of the underlying claim, Certain Underwriters at Lloyds of London v. Illinois Nat'l Ins. Co., No. 09 CV 4418, 2016 WL 6876497, at *8 (S.D.N.Y. Sept. 30, 2016), amended on denial of reconsideration, No. 09 CV 4418 (LAP), 2017 WL 10699406 (S.D.N.Y. Jan. 5, 2017) (citing Gleason v. Norwest Mortgage, Inc., 253 F. App' x 198, 204 (3d Cir. 2007); Benevenga v. Digregorio, 325 N.J. Super. 27, 35 (App. Div. 1999)), and courts have applied these rates in determining prejudgment interest in the context of a breach of contract claim. See, e.g., Promotion in Motion, Inc. v. Beech-Nut Nutrition Corp., No. 09 CV 1228, 2012 WL 5045135, at *2 (D.N.J. Oct. 17, 2012) (applying New Jersey Court Rule 4:42-11 to determine prejudgment interest on a breach of contract award).  Thus, this Court finds that, as a matter of equity, the interest schedule articulated in New Jersey Court Rule 4:42-11 is an appropriate guide for assessing interest on the Annuity payment.

The Court also finds that plaintiff's initial demand for prejudgment interest was in error in that the accountant calculated compound interest, which is clearly inappropriate under New Jersey law. See New Jersey Court Rule 4:42-11(a) (stating that money judgments and awards "shall bear simple interest"); Henderson v. Camden Cty. Mun. Util. Auth., 176 N.J. at 557–61, 826 A.2d at 618-20; W.R. Huff Asset Mgmt. Co., L.L.C. v. William Soroka 1989 Trust, 2009 WL 2436692, at *10.  Thus, plaintiff's initial demand for $125,086.85 in interest accumulated on the Annuity, which was based on Mr. Delsanto's erroneous use of compound interest, should be denied.

15

In recognition of this error, plaintiff submitted revised calculations, in which plaintiff's accountant calculated simple interest accrued on the Annuity between February 1, 2013 through July 2020, using the rates set forth in New Jersey Court Rule 4:42-11, plus the increased 2% rate applicable to amounts greater than $15,000.  His revised interest calculations are set forth below:

| Year | Interest Rate[12] | Balance | Accumulated Interest |
|---|---|---|---|
| Feb. 1, 2013 | 2.25% | $574,901.24 | $11,857.34 |
| 2014 | 2.25% | $574,901.24 | $12,935.28 |
| 2015 | 2.25% | $574,901.24 | $12,935.28 |
| 2016 | 2.25% | $574,901.24 | $12,935.28 |
| 2017 | 2.50% | $574,901.24 | $14,372.53 |
| 2018 | 2.50% | $574,901.24 | $14,372.53 |
| 2019 | 3.50% | $574,901.24 | $20,121.54 |
| July 31, 2020 | 4.50% | $574,901.24 | $15,091.16 |

(Delsanto Second Aff., Ex. A).  Thus, according to plaintiff's revised calculations, on July 31, 2020, plaintiff was entitled to $114,620.93 in prejudgment interest on the Annuity.  (Id.)

Plaintiff's calculations regarding the annual accumulation of interest between February 1, 2013 and July 31, 2020 are off by a single cent but otherwise correct.  Applying the published interest rate for 2013, plus 2% because the amount is over $15,000, the Court has verified that interest accumulated on the $574,901.24 Annuity payment at a rate of 2.25%, annually for eight months, with a total of $11,857.34 in interest accumulated in 2013.  In 2014, 2015, and 2016, interest accumulated on the $574,901.24 Annuity at the rate of 2.25% per year, resulting in prejudgment interest equal to $12,935.28 per year for three years.  In 2017 and 2018, interest

---

[12] As noted, these interest rates include the additional 2% as provided for in New Jersey Court Rule 4:42-11(a)(iii).

16

accumulated on the $574,901.24 Annuity at a rate of 2.50% per year, or $14,372.53 per year.  In 2019, interest accumulated on the $574,901.24 Annuity at a rate of 3.50% per year for a full year for a total of $20,121.54 in prejudgment interest for that year.  In 2020, from January through July, interest accumulated on the $574,901.24 Annuity at a rate of 4.50% for seven months for a total of $15,091.16.  Adding the yearly amounts of prejudgment interest accumulated between February 2013 through July 2020, plaintiff is entitled to $114,620.94 in interest—one cent more than the sum calculated by Mr. Delsanto.

This Court further finds that plaintiff is also entitled to an award of prejudgment interest that has accumulated on the Annuity between the time that Mr. Delsanto prepared his calculations to date.  Since the applicable interest rate under New Jersey Rule 4:42-11 was 4.50% for the five remaining months of 2020 (August through December), plaintiff is entitled to an additional $10,779.40 in prejudgment interest on the Annuity for that period. The applicable interest rate to be applied in 2021 is 3.50%.  Thus, for the elapsed eight months and eight days of 2021 (January through September 8), plaintiff is entitled to an additional award of prejudgment interest of $13,855.38.  In total, $24,634.78 in prejudgment interest accumulated on the Annuity from August 2020 through September 7, 2021.

In sum, it is respectfully recommended that plaintiff be awarded $139,255.72 in prejudgment interest on the Annuity payment.

b) Prejudgment Interest on the Pension Benefit Payments

As with the Annuity, this Court finds that, as a matter of equity, the interest schedule articulated in New Jersey Court Rule 4:42-11 should be used in assessing interest on the pension benefit payments.  Certain Underwriters at Lloyds of London v. Illinois Nat'l Ins. Co., No. 09 CV 4418, 2016 WL 6876497, at *8; Benevenga v. Digregorio, 325 N.J. Super. at 35; Promotion

17

in Motion, Inc. v. Beech-Nut Nutrition Corp., No. 09 CV 1228, 2012 WL 5045135, at *2.  As set forth above, plaintiff's initial calculation of prejudgment interest on the pension benefits was in error because the accountant used compound interest which is not appropriate under New Jersey law in these circumstances, and plaintiff has acknowledged that error in his Reply.

Defendant raises another challenge to plaintiff's calculation of prejudgment interest as applied to the pension benefits.  (Def.'s Mem. at 2).  Defendant does not dispute that the total amount of pension benefits accrued during the period between April 1, 2013, when defendant received the first payment, until the decedent's father's death on March 1, 2017, was $103,319.43.  (Id.)  Rather, defendant argues that in calculating prejudgment interest on the pension benefits paid, the additional 2% interest rate set forth in New Jersey Court Rule 4:42-11(a)(iii) should not apply.  (Id.)

Specifically, defendant notes that in deciding to apply the additional 2% interest rate in calculating interest on the pension payments, Mr. Delsanto aggregated the individual disbursements to reach the required $15,000 threshold instead of treating each monthly payment as a separate "mini-judgment."  (Def.'s Mem. at 2).  Defendant analogizes the pension payments to an installment contract, arguing that prejudgment interest should accrue from the date each defaulted installment became due.  (Id. at 2-3 (quoting Skaff v. Progress Intern., LLC, 12 CV 9045, 2014 WL 856521, at *5 (S.D.N.Y. Mar. 4, 2014); citing Slover v. Live Universe, Inc., 8 CV 02645, 2009 WL 606133, at *5 (D.N.J. Mar. 9, 2009))).  Since the individual monthly benefit payments all fall below the $15,000 threshold, defendant argues that it is improper to assess the additional 2% interest rate on top of the applicable rates set out in New Jersey Court Rule 4:42-11(a)(ii).

In Reply, plaintiff argues that the monthly pension benefits were not part of an installment contract and therefore the total amount of payments accrued should be considered in determining whether they are more than $15,000. (Pl.'s Reply at 2). Plaintiff does not cite any authority for this proposition.

The 2% increased interest rate applies to the pension payments. New Jersey Court Rule 4:42-11(a)(ii) specifies that the increased interest rates apply to judgments exceeding $15,000 "at the time of entry." This language must be construed according to its plain and unambiguous meaning. Nini v. Mercer Cty. Cmty. Coll., 202 N.J. 98, 108, 995 A.2d 1094, 1099-1100 (2010); Oberhand v. Dir., Div. of Tax'n, 193 N.J. 558, 568, 940 A.2d 1202, 1207 (2008); Advance Elec. Co. v. Montgomery Twp. Bd. of Educ., 351 N.J. Super. 160, 172, 797 A.2d 216, 223 (App. Div. 2002)). Thus, because plaintiff will be entitled to $103,319.43 for the pension benefits paid to defendant, the damages award at the time of the entry of judgment for the pension benefits will exceed $15,000. New Jersey Court Rule 4:42-11(a)(ii). Thus, plaintiff is entitled to an award of prejudgment interest calculated at the increased rate of 2% set forth in the chart above.

Turning to plaintiff's simple interest calculations on the pension benefits, Mr. Delsanto did little in the way of explaining how he arrived at the simple interest calculations that he did. (Delsanto Second Aff. ¶ 4). The chart attached to his affidavit explaining his calculation lacks any explanation of the specific steps that he took to reach his result. (Delsanto Second Aff., Ex. B). The Court's difficulty in discerning Mr. Delsanto's method of calculation is in no way allayed by the fact that Mr. Delsanto admittedly erred in initially calculating compound interest. (Delsanto Second Aff. ¶ 1).

For example, in the chart that plaintiff provided the Court, Mr. Delsanto appears to assess interest on the individual pension benefit payments for the month in which they were paid and

then adds the first month of interest for each payment together in a running tab in the right-most column.  (Delsanto Second Aff., Ex. B).  It is unclear, however, how he calculated the interest assessed on each payment after the month in which it was paid.

While the left most column lists the "opening balance" (id.), and presumably Mr. Delsanto could have calculated the month-by-month accumulation of interest on all paid benefits by applying the annual interest rate to the opening balance each month, it is unclear whether he has done that, or, in fact, what the opening-balance column is meant to represent.  For some months in 2015, the figure in the opening balance column is identical to the month preceding it.  (Id.)  Specifically, the opening balance is identical in April and May of 2015, despite the May payment.  (Id.)  Similarly, for June and July, the opening balances are identical; the August and September balances are identical; the October and November balances are identical; and the two balances listed for December are identical.  (Id.)  The fact that only 2015 exhibits this phenomenon is not explained and suggests possible error.  (Id.)  This Court is also troubled by the fact that the opening balance column never equals the total value of the pension payments made, and instead lists a total balance of $91,839.21, even though defendant received a total of $103,319.43 in pension payments.  (Id.)  Again, no explanation has been given as to why the figure $91,839.21 is used.

Mr. Delsanto's method is further obfuscated by the rows relating to December of each year.  In those months, defendant received a bonus payment as well as a regular payment from the pension fund.  Mr. Delsanto inexplicably ceases to tabulate the accumulated interest in the right column each December, as he does for all other months, and instead lists a lower figure for both December payments each year.  (Id.)  It is unclear what, exactly, these lower figures represent.

20

Since the Court has been unable to replicate the calculations of the plaintiff's accountant, and there are several issues that require further explanation as detailed above, it is therefore respectfully recommended that plaintiff's request for prejudgment interest on the pension benefit award be denied at this time without prejudice. The Court further recommends that plaintiff be permitted to file a new affidavit clearly explaining how the simple interest calculations on the pension benefit payments were arrived at and the methodology used.

    c) Tolling the Interest

Defendant argues that plaintiff's recovery of prejudgment interest on both the Annuity and the pension benefits should be limited as a matter of equity. (Def.'s Mem. at 3-4). Specifically, defendant argues that the Court should exercise its discretion and toll the running of the prejudgment interest on the Annuity during the period from July 6, 2016 until May 21, 2020, because during that time, there was a temporary restraining order in place preventing defendant from using the Annuity funds.[13] (Id.) Defendant's theory is that since prejudgment interest is awarded to compensate the prevailing party for the inability to use the funds while the unsuccessful party has had the benefit of the funds, here, defendant was not able to access the Annuity funds either during this period, and therefore, prejudgment interest should be tolled. (Id. at 3).

Defendant further argues that plaintiff's lack of diligence in failing to pursue discovery before October 5, 2017 and plaintiff's subsequent request to reopen discovery caused significant

---

[13] The Court notes that no temporary restraining order was actually entered in this case. As set forth above, the parties voluntarily entered into a stipulation, styled as a preliminary injunction, in which defendant agreed not to take any distributions, make any withdrawals, or transfer any funds between June 28, 2016 and October 31, 2016, while settlement discussions continued. (Mem. & Order at 2-3). When the stipulation expired in October 2016, plaintiff moved for a preliminary injunction but that motion was denied. (Id. at 3). Hence, it is unclear what defendant is referring to when she refers to a temporary restraining order spanning the period from July 2016 to May 2020.

delay warranting tolling interest for both the Annuity and pension benefits. (Id. at 3-4). Thus, according to defendant, all prejudgment interest should be tolled during the period from August 28, 2019 through the issuance of Judge Vitaliano's June 12, 2020 Order referring the pre-motion conference request and plaintiff's proposed second motion for summary judgment. (Id.)

In reply, plaintiff argues that after defendant's appropriation of the Annuity funds, it was plaintiff who was entitled to the Annuity funds and yet did not have use of them. (Pl.'s Reply Mem. at 3). Moreover, during the time that the Annuity proceeds were being restrained, they were earning interest. (Id.). Plaintiff further notes that in W.R. Huff Asset Management Co., LLC v. William Soroka 1989 Trust, the court specifically rejected the argument that, because the unsuccessful party in that case also did not have access to the funds held in reserve, no interest should be assessed. 2009 WL 2436692, at *5. In that case, the court held that "whether or not the individual members [of plaintiff, the unsuccessful party] had the benefit of the funds while the case was pending is not a reason to forego prejudgment interest; the point is that the *defendants did not* have benefit of the funds when they should have." Id. (emphasis in original). Plaintiff also contends that there is no legal authority cited anywhere in defendant's papers to support tolling because of a party's alleged lack of diligence in conducting discovery. (Pl.'s Reply at 4). In addition, plaintiff argues that whatever delays occurred were due to the defendant's own lack of cooperation in responding to plaintiff's requests for discovery required to set damages. (Id.)

Under New Jersey law, a court may toll prejudgment interest only in "exceptional cases." Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc., 87 F. Supp. 2d 394, 402–03 (D.N.J. 2000) (quoting New Jersey Court Rule 4:42-11(b)). "That exception . . . should be used sparingly." North Bergen Rex Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Sys., 158 N.J. 561, 575,

730 A.2d 843, 851 (1999) (citing Osborne v. O'Reilly, 267 N.J. Super. 329, 334, 631 A.2d 577

(Law Div. 1993)). "New Jersey courts have found exceptional circumstances on the basis of

'[e]quitable considerations,'" for example, "'when plaintiff is at fault or the litigation is delayed

by court order . . . or where defendant is not fully insured.'" Salas by Salas v. Wang, 846 F.2d

897, 909 (3d Cir. 1988) (citations omitted) (quoting Pavoll v. Island Petroleum, 204 N.J. Super.

99, 103, 497 A.2d 919, 922 (Law Div. 1985)).

     This case does not present exceptional circumstances warranting tolling. The delays that

occurred during the progression of this case occurred during the normal course of the litigation.

Plaintiff's request to reopen discovery after the motion for summary judgment was decided was

granted by the court, indicating that the court considered it to be a good faith request and not a

tactic to delay proceedings. In addition, defendant's lack of access to the Annuity funds is

irrelevant. Interest is assessed here to compensate the plaintiff for her lack of access to the

funds, which was caused by defendant's misappropriation of them and was unchanged by the

fact that defendant may not have had complete access to them. Unihealth v. U.S. Healthcare,

Inc., 14 F. Supp. 2d 623, 642 (D.N.J. 1998) (holding that, under New Jersey state law, "[t]he

purpose of awarding prejudgment interest is to compensate the claimant for the loss of income

the money owed would have earned if payment had not been delayed"). Moreover, nothing in

the parties' stipulation suggests that they agreed that prejudgment interest would be tolled absent

extraordinary circumstances.

     Accordingly, it is respectfully recommended that defendant's request to toll the

accumulation of prejudgment interest be denied.

D.  Post-Judgment Interest

Unlike prejudgment interest, post-judgment interest is a matter of procedure governed by federal law.  FCS Advisors, Inc. v. Fair Fin. Co., 605 F.3d 144, 147 (2d Cir. 2010) (citing Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 102 (2d Cir. 2004); Schipani v. McLeod, 541 F.3d 158, 164–65 (2d Cir. 2008)).  Thus, plaintiff's entitlement to post-judgment interest is controlled by 28 U.S.C. § 1961.

Under 28 U.S.C. § 1961(a), plaintiff is entitled to post-judgment interest "on any money judgment in a civil case recovered in a district court."  The amount of interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of judgment."  Id.  "Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually."  Id. at (b).  Thus, it is respectfully recommended that plaintiff be awarded any interest that accrues after entry of this judgment according to 28 U.S.C. § 1961.

E.  Attorney's Fees and Costs

1.  Choice of Law Analysis

As with prejudgment interest, in diversity cases, state law—rather than federal law—governs the determination of the award of attorney's fees.  Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 259 n.31 (1975); Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 177 (2d Cir. 2005) (citing Banker v. Nighswander, Martin & Mitchell, 37 F.3d 866, 873 (2d Cir.1994)).  This includes the method by which attorney's fees are calculated.  N. Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 475 (1st Cir. 1988).

Thus, a federal court exercising diversity jurisdiction and deciding whether to award attorney's fees under either New York law or New Jersey law, as in this case, must apply New York's choice-of-law rules as if the suit were brought in New York state court.  Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 151 (2d Cir. 2013) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. at 494–97); Digital Camera Int'l Ltd. v. Antebi, No. 11 CV 1823, 2014 WL 940723, at *3 (E.D.N.Y. Mar. 11, 2014) (citing American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997)).  "In cases involving foreign causes of action, New York will apply its own procedural law and the substantive law of the foreign jurisdiction." Bensen v. American Ultramar Ltd., No. 92 CV 4420, 1997 WL 317343, at *13 (S.D.N.Y. June 12, 1997); 2138747 Ontario, Inc. v. Samsung C & T Corp., 31 N.Y.3d 372, 377, 103 N.E.3d 774, 777 (2018); Davis v. Scottish Re Grp. Ltd., 30 N.Y.3d 247, 252, 88 N.E.3d 892, 895 (2017). Thus, the question presented in this case is "whether a New York court would consider attorney's fees an issue of substance or procedure."  Bensen v. American Ultramar Ltd., 1997 WL 317343, at *13; Deutsche Bank Tr. Co. v. American Gen. Life Ins. Co., No. 15 CV 3869, 2016 WL 5719783, at *13 (S.D.N.Y. Sept. 30, 2016), aff'd sub nom. Deutsche Bank Tr. Co. Americas v. Serengeti Opportunities MM LP, 707 F. App'x 741 (2d Cir. 2017); Insurance Co. of the State of Pennsylvania v. Equitas Ins. Ltd., No. 17 CV 6850, 2021 WL 3501597, at *2 (S.D.N.Y. July 28, 2021), report and recommendation adopted, No. 17 CV 6850, 2021 WL 3492086 (S.D.N.Y. Aug. 5, 2021).

As has been noted by other federal courts sitting in New York, "[d]ecisions in this circuit are in conflict regarding whether attorney fee shifting should generally be classified as substantive or procedural under New York law."  Insurance Co. of the State of Pennsylvania v. Equitas Ins. Ltd., 2021 WL 3501597, at *3 (quoting Deutsche Bank, 2016 WL 5719783, at *13);

25

see also Glispa GmbH v. Cupcake Digit., Inc., No. 16 CV 7230, 2017 WL 5466669, at *1 (S.D.N.Y. Nov. 2, 2017); Bensen v. American Ultramar Ltd., 1997 WL 317343, at *9.

The law governing fee shifting in contract disputes in New York and New Jersey is, for purposes of this case, identical.  Compare Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491, 548 N.E.2d 903, 904 (1989) (holding that, "[u]nder the general rule, attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule," and that fee shifting agreements must be "strictly construed"), with Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. at 385, 982 A.2d at 427 (internal citations and quotation marks omitted) (noting that, "[i]n general, New Jersey disfavors the shifting of attorneys' fees[,] . . . [h]owever, a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract," and holding that fee-shifting agreements must be "strictly construed").  Usually, "where there is no real conflict, the law of the forum state applies."  Labajo v. Best Buy Stores, L.P., 478 F. Supp. 2d 523, 529 (S.D.N.Y. 2007) (citing Wall v. CSX Transp., Inc., 471 F.3d 410, 422–23 (2d Cir. 2006)); Torain v. Clear Channel Broad., Inc., 651 F. Supp. 2d 125, 148 n. 17 (S.D.N.Y. 2009).

Nevertheless, the parties have couched their arguments for and against attorney's fees by citation to New Jersey law and have apparently decided not to raise a choice of law issue regarding attorney's fees.  (See Pl.'s Mem. at 14-15; Def.'s Mem. at 4-14).  Thus, they have implicitly consented to have the issue of attorney's fees decided according to New Jersey law. See Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (internal quotation marks and citations omitted) (holding that the parties' assumption in their briefs that a particular choice of law governed the case amounted to "implied consent" and was "sufficient to establish

choice of law"); <u>Tehran–Berkeley Civil & Environmental Engineers v. Tippetts–Abbett–McCarthy–Stratton</u>, 888 F.2d 239, 242 (2d Cir. 1989); <u>Deutsche Bank Tr. Co. v. American Gen. Life Ins. Co.</u>, 2016 WL 5719783, at *7); <u>Digital Camera Int'l Ltd. v. Antebi</u>, 2014 WL 940723, at *3.

Therefore, this Court has applied New Jersey law in analyzing plaintiff's counsel's entitlement to attorney's fees.

2. <u>Plaintiff's Entitlement to Attorney's Fees</u>

In this case, the Property Settlement Agreement contains a specific provision relating to attorney's fees:

> In the event that either of the parties breaches a provision of this Agreement resulting in the offended party having to bring the subject of the breach before a court of competent jurisdiction in order to enforce the terms of the Agreement, the offended party shall have the right to apply for reimbursement by the offending party for the reasonable counsel fees and costs incurred by the offended party.

(Agr. B 13(g)).

Although defendant does not dispute the language of this provision, defendant opposes an award of fees to the plaintiff, arguing that she has failed to establish that she was an intended beneficiary of the fee-shifting provision of the Agreement, despite the decedent's father's assignment of rights. (Def.'s Mem. at 4). Citing the same cases relied upon by plaintiff, defendant contends that New Jersey law "disfavors the shifting of attorneys' fees," and that when there is a contractual provision that forms the basis for the claim of fees, "'the provision should be strictly construed in light of [New Jersey's] general policy disfavoring the award of attorneys' fees.'" (<u>Id.</u> (quoting <u>Litton Indus. v. TMO Indus., Inc.</u>, 982 A.2d at 428, 200 N.J. at 385)).

Defendant argues that the fact that the district court found the decedent's father to be the intended third-party beneficiary of Paragraph 13(g) of the Property Settlement Agreement—the provision in which defendant waived her rights to claim decedent's Annuity and pension benefits—does not mean that Paragraph 3 of the Agreement was also intended to benefit the decedent's father.  (Id.)  Defendant contends that since plaintiff's right to damages hinged on the father's claims, it follows that since the father had no right to seek fees, then plaintiff has no right to seek fees.  (Id. (quoting Animal Sci. Prods., Inc. v. China Minmetals Corp., 34 F. Supp. 3d 465, 510 (D.N.J. 2014) (internal quotations omitted) (holding that "[i]t is elementary ancient law that an assignee never stands in any better position than his assignor")).

In this case, the district court found that the decedent's father was an intended third-party beneficiary of the Agreement. (Mem. and Order at 6).  Citing the decision in Matter of Unanue, plaintiff argues in her Reply Memorandum that there, the New Jersey appellate court held that where there is an agreement that contains language stating that the provision applied to the parties' "respective heirs and assigns," the attorney's fee provision in the agreement was intended to include all third-party beneficiaries.  (Pl.'s Reply at 6 (quoting 311 N.J. Super 589, 598, 710 A.2d 1036, 1038 (App. Div. 1998))).

Here, the district court concluded that the parties intended for the decedent's father to be a third-party beneficiary of the Agreement, and nothing in the court's prior Order suggests that the only provision in the Agreement that would apply to the decedent's father was Paragraph 13(g).  Moreover, nothing in the Agreement itself can be read to suggest that the provisions of the Agreement were intended to be severable.  Indeed, the fee shifting provision does not limit recovery to the decedent, but rather provides that if any party to the Agreement breaches the Agreement, the "offended party" has the right to seek attorney's fees.  (Agr. ¶ 13(g)).  As a third-

party beneficiary to the Agreement, the decedent's father is the "offended party" in this breach of contract dispute.  Had he continued to pursue the breach of contract claim against defendant and been successful, as the "offended party," the Agreement would have allowed him to seek fees.  Through the assignment of his rights, plaintiff now stands in the father's shoes as the "offended party."  This reading of the Agreement is consistent with Paragraph 13(f), the paragraph immediately preceding the fee shifting provision, which provides that "*[a]ll provisions* of this Agreement shall be binding upon the respective heirs, next of kin, executors, administrators, and *assigns* of the parties thereto." (Agr. ¶ 13(f)) (emphasis added).

In the absence of any contrary evidence or legal authority suggesting otherwise, the Court finds that the fee shifting provision of the Agreement applies not only to the decedent and defendant, but to the father and his assigns.  Accordingly, the Court respectfully recommends that plaintiff receive an award of attorney's fees and costs as set forth below.

3.  Determining Reasonable Attorney's Fees

Under New Jersey law, courts are tasked with determining what constitutes a reasonable fee award.  Litton Indus. v. TMO Indus., Inc., 982 A.2d at 428, 200 N.J. at 385-86.  The goal of this analysis is to approve reasonable attorney's fees that are not excessive.  Id., 982 A.2d at 429, 200 N.J. at 388.

Courts begin by asking whether the party seeking the fee prevailed in the litigation.  Litton Indus. v. TMO Indus., Inc., 982 A.2d at 428, 200 N.J. at 385-86.  Courts applying New Jersey law use a two-pronged test to determine when a party seeking fee shifting has prevailed.  North Bergen Rex Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Sys., 158 N.J. at 570, 730 A.2d at 848–49.  First, the party must "demonstrate that [the] lawsuit was causally related to securing the relief obtained; a fee award is justified if [the party's] efforts are a 'necessary and

29

important' factor in obtaining the relief." Id. (internal quotation marks omitted).  Under the

second prong, the party seeking fees must show that the "relief granted had some basis in law."

Id., 158 N.J. at 571, 730 A.2d at 849.  "The party seeking attorneys' fees need not recover all

relief sought, but rather, there must be the settling of some dispute that affected the behavior of

the [party asked to pay attorneys' fees] towards the [party seeking attorneys' fees]."  Id. (quoting

Davidson v. Roselle Park Soccer Fed'n, 304 N.J. Super. 352, 357, 700 A.2d 900 (Ch.Div. 1996)

(quoting Feriozzi Co. v. City of Atlantic City, 268 N.J. Super. 310, 314, 633 A.2d 581 (Law Div.

1993))) (internal quotation marks omitted).

    Here, plaintiff is the prevailing party:  plaintiff prevailed on the motion for summary

judgment with the district court's ruling that defendant breached the contract with the decedent

and was therefore required to pay damages to plaintiff for the loss of the Annuity and a portion

of the pension benefits.  Even though plaintiff may not have prevailed on all the theories that she

raised in support of summary judgment, she still achieved the relief that she sought and won a

complete award of money damages from the defendant.  North Bergen Rex Transp., Inc. v.

Trailer Leasing Co., a Div. of Keller Sys., 158 N.J. at 571, 730 A.2d at 849.

    "The next step in determining the amount of the award is to calculate the 'lodestar,'

which is that number of hours reasonably expended by the successful party's counsel in the

litigation, multiplied by a reasonable hourly rate." Litton Indus., Inc. v. IMO Indus., Inc., 200

N.J. at 386, 982 A.2d at 428 (citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21, 860 A.2d 435

(2004)).  Calculating the lodestar requires the court to determine the reasonableness of the hourly

rate of "the prevailing attorney in comparison to rates for similar services by lawyers of

reasonably comparable skill, experience, and reputation in the community."  Id. (internal

quotation marks omitted); N.J. Rules Prof'l Conduct R. 1.5(a).  The court "must" also consider

the degree of the prevailing party's success in determining the reasonableness of the time expended. Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. at 387, 982 A.2d at 429. "Thus, when a party has succeeded on only some of its claims for relief, the trial court should reduce the lodestar to account for the limited success." Id. In addition, "if the same evidence adduced to support a successful claim was also offered on an unsuccessful claim, the court should consider whether it is nevertheless reasonable to award legal fees for the time expended on the unsuccessful claim." Id.

In support of plaintiff's motion for attorneys' fees, Perry S. Friedman, Esq., plaintiff's counsel, has provided a Declaration, dated August 19, 2020, in which he seeks fees in the amount of $213,600, representing 427.3 hours expended on this matter between February 2015 through the date of the Declaration—August 19, 2020. (Friedman Decl.[14] ¶¶ 7, 20).[15] Counsel also seeks reimbursement of incurred costs in the amount of $1,049.18. (Id. ¶ 22). On November 9, 2020, counsel submitted his Reply Declaration in support of attorney's fees, in which he requested an additional $10,425 in fees representing the additional 20.85 hours expended on this matter between August 19, 2020 and November 9, 2020, bringing the total amount of attorney's fees requested to $224,025. (Reply Decl.[16] ¶¶ 2, 3). Mr. Friedman also amended his request for costs, raising the total request for costs to $2,548.38. (Id. ¶ 8).

In calculating his fees, Mr. Friedman notes that his fee arrangement with the plaintiff was on a straight contingency basis with an advance retainer. (Friedman Decl. ¶ 8). It is for this

---

[14] Citations to "Friedman Decl." refer to the Declaration of Perry S. Friedman in Support of Attorneys Fees, dated August 19, 2020, ECF No. 133-21.

[15] Plaintiff's counsel is mistaken regarding the number of hours that his submissions indicate that he worked between February 2015 and August 19, 2020. In adding up the hours listed in counsel's time records, the Court arrives at 432.7 hours for this period. Counsel appears to have erroneously transposed these numbers in claiming only 427.3 hours.

[16] Citations to "Reply Decl." refer to the Reply Declaration of Perry S. Friedman in Support of Attorneys Fees, dated November 9, 2020, ECF No. 133-31.

reason that he failed to attach invoices or bills to the fee application.  (Id.)  Since Mr. Friedman worked on a contingency basis, he does not have an hourly rate reflected in the retainer agreement but asks for a rate of $500 per hour based on his experience and the location of his office in lower Manhattan.  (Id. ¶¶ 12, 16).  He states that he has been admitted to practice in New York since 1982, with admission to this Court and the Southern District of New York since 1986.  (Id. ¶ 13).  He was an associate at Reich & Reich until he began his own practice in 1996, and he claims to have handled numerous breach-of-contract cases during his years of practice. (Id.)

Mr. Friedman has also submitted the Declaration of Adam Russ, head of the litigation practice of Wasser & Russ in Manhattan, who attests to the fact that Mr. Friedman's requested hourly rate of $500 per hour is within the range of prevailing rates charged by attorneys in Manhattan who have comparable skills and experience for this type of case.  (Id. ¶ 14; Russ Decl.[17] ¶ 4).  He also cites the decision in Sidley Holding Corp. v. Ruderman, No. 08 CV 2013, 2009 WL 6047187, at *26 (S.D.N.Y. Dec. 30, 2009), in which the Southern District of New York found that the prevailing rate in that district for contract litigation attorneys was between $450 and $600 per hour. (Friedman Decl. ¶ 15).

As for the hours expended in the matter, plaintiff's counsel explains that, among other things, he drafted the complaint and two amended complaints, defended against counterclaims that were eventually dismissed, filed a motion for preliminary injunction, prepared discovery requests and responded to defendant's discovery requests, prepared plaintiff for deposition and attended her deposition, attended numerous conferences with the court, by phone and in person, engaged in numerous attempts to resolve the case, including by attending mediation sessions

---

[17] Citations to "Russ Decl." refer to the Declaration of Adam Russ, dated August 17, 2020, ECF No. 133 -26.

with an Eastern District of New York panel mediator and with the Court, moved for summary judgment and responded to defendant's motion for reconsideration, conducted discovery on the issue of damages, attended conferences with the Court, and filed the instant motion for summary judgment, including all the supporting paperwork on the issue of damages and prejudgment interest.  (Id. ¶ 7).

In summary, plaintiff's counsel contends that his request for a rate of $500 per hour and for the hours expended totaling 448.15[18] is reasonable.

### 4.  The Relevant Community

In objecting to plaintiff's fee request, defendant contends that the requested fee rate should be commensurate with rates in the Eastern District of New York, and not exceed $350 per hour.  (Def.'s Mem. at 5-8).  Defendant is correct that the relevant community to which this Court must look in determining reasonable attorney's fees is the Eastern District of New York.

In determining what constitutes reasonable fees, the Supreme Court of New Jersey looks to the "prevailing market rates in the relevant community." Frank's Chicken House, Inc. v. Mayor & Council of Borough of Manville, 208 N.J. Super. 542, 548, 506 A.2d 751, 754 (App. Div. 1986) (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)); Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. at 386-87, 982 A.2d at 428-29.  The same rule holds in this Circuit.  Resnik v. Coulson, No. 16 CV 676, 2020 WL 5802362, at *3 (E.D.N.Y. Sept. 28, 2020) (quoting Farbotko v. Clinton County, 433 F.3d 204, 208 (2d Cir. 2005)).  For purposes of federal courts, the relevant community is the "district where the court sits."  Id. (internal quotation marks omitted); Rudler v. Houslanger & Associates, PLLC, No.  18 CV 7068, 2020 WL 473619, at *3 (E.D.N.Y.

---

[18] Likely due to counsel's transposition error (see supra note 15), this number is also erroneous.  Counsel lists a total of 453.55 hours in his submissions.  However, since counsel has only requested that his fees be calculated for 448.15 hours, that is the number that the Court has used in determining the attorney's fee award.

Jan. 29, 2020); cf. Committee of Petitioners to Protest Adoption of Ordinance No. 2016-01 v. Borough of Belmar, No. A-2869-16T1, 2019 WL 1787458, at *7 (N.J. Super. Ct. App. Div. Apr. 24, 2019) (affirming the trial court's determination that counsel's fees were appropriate for the county in which that court sat); Sutter v. Horizon Blue Cross Blue Shield of New Jersey, 406 N.J. Super. 86, 104, 966 A.2d 508, 519 (App. Div. 2009) (citing In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109, 128 (D.N.J. 2002)) (holding that courts should determine whether requested fees are "appropriate for the region").

Counsel seeking a fee rate that is higher than that generally found reasonable in the district must "persuasively establish[] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Simmons v. New York City Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009). See also Barkley v. United Homes, LLC, Nos. 4 CV 875, 5 CV 187, 5 CV 4386, 5 CV 5302, 5 CV 5362, 5 CV 5679, 2012 WL 3095526, at *6 (E.D.N.Y. July 30, 2012); Blue Moon Media Group, Inc. v. Field, No. 8 CV 1000, 2011 WL 456088, at *11 (E.D.N.Y. Apr. 11, 2011), report and recommendation adopted, 2011 WL 4056088 (E.D.N.Y. Sept. 12, 2011). Defendant contends that the only explanation given by plaintiff's counsel to justify the requested fee rate that he contends should be awarded is that his office is in Manhattan, and, so the argument goes, the rates applicable in the Southern District of New York should apply. (Def.'s Mem. at 6 (citing Friedman Decl. ¶ 16)). In Bentley Laboratories LLC v. TPR Holdings LLC, No. 14 CV 6306, 2017 WL 4326536, at *3 (S.D.N.Y. Sept. 28, 2017), the court, sitting in the Southern District of New York, rejected counsel's argument that, because counsel's office was in Woodbridge, N.J., the court was obligated to consider the rates applicable in that locale, stating "the Second

Circuit's forum rule requires [the court] to consider the rates charged in the Southern District of New York in assessing reasonableness."

In his Reply Memorandum, plaintiff's counsel argues that courts have recognized that the border between the Eastern District of New York and the Southern District of New York is "uniquely permeable," separated only by the Brooklyn Bridge.  (Reply at 7 (quoting Luca v. County of Nassau, 698 F. Supp. 2d 296, 300 (E.D.N.Y. 2010))).  In fact, 60% of the litigants appearing in this district have offices in the Southern District of New York.  Id. (citing United States v. Sixty-One Thousand Nine Hundred Dollars And No Cents, 865 F. Supp 484, 493 (E.D.N.Y. 2012)).  However, this argument ignores the Second Circuit's admonition that "[a] litigant cannot overcome the presumption [in favor of the forum rule] through mere proximity of the districts."  Simmons v. New York City Transit Auth., 575 F.3d at 175-76.  Moreover, the presumption that the prevailing fees within the district that the court sits dictate attorney's fee awards can be overcome where the litigant claiming an award can show that a reasonable client would select out-of-district counsel to produce a better result in the client's case.  Id.  Thus, the Court is constrained to apply the rates found to be presumptively reasonable in the Eastern District of New York unless plaintiff's counsel can show that there were reasons why a client would have selected an out-of-district counsel.

In attempting to make that argument, plaintiff's counsel contends that this was a "lengthy complex case with numerous complex issues" (Reply at 8) that were "unique and for the most part were of first impression."  (Friedman Decl. ¶ 17).  Counsel notes that the case was reported in the legal press and in other states.  (Id.)

Having considered these arguments, the Court finds that, while the judge's determination in this case may have been one of first impression, there is nothing unique about the issues raised

in this contract dispute that would justify the conclusion that counsel wishes the Court to reach—namely, that a reasonable client would have selected Mr. Friedman because of any unique expertise or special circumstances that would justify disregarding the forum rule.  Accordingly, the Court looks to the prevailing rates in the Eastern District of New York. (See discussion infra).

  5. Reasonable Hourly Rates in the Eastern District of New York

  In determining the prevailing rate for attorney's fees, courts may look to prior awards in the forum in which the court sits as well as reflect upon the court's own experience in determining fee awards.  See Farbotko v. Clinton Cty., 433 F.3d at 209 (holding that courts may rely on "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district"); see also Hugee v. Kimso Apts, LLC, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012); Committee of Petitioners to Protest Adoption of Ordinance No. 2016-01 v. Borough of Belmar, 2019 WL 1787458, at *8; Ferante v. Sciaretta, No. HNTL-584-02, 2003 WL 22048115, at *2 (N.J. Super. Ct. July 17, 2003).  "When attorney's fees are awarded, the current market rate must be used."  Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001) (citing Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990); Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202 (1995)); accord Farbotko v. Clinton Cty. of New York, 433 F.3d at 209–10 (rejecting a district court's reliance on historical rates, where the district court failed to find that those rates reflected then currently prevailing rates).

  The current "prevailing rates" for attorneys in the Eastern District of New York are "approximately" $300 to $450 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates.  Rudler v. Houslanger & Assocs., PLLC, 2020 WL 473619, at *4 (compiling cases); Cleanup N. Brooklyn by Chantrtanapichate v. Brooklyn

Transfer LLC, 373 F. Supp. 3d 398, 404 (E.D.N.Y. 2019), appeal withdrawn sub nom. Cleanup

N. Brooklyn v. Brooklyn Transfer LLC, No. 19 CV 1019, 2019 WL 5212639 (2d Cir. July 19,

2019); see also Resnik v. Coulson, 2020 WL 5802362, at *3-4 (awarding a partner with Nixon

Peabody LLP with 30 years' experience $400 per hour for his work in a complex civil case).

    These amounts are consistent with the fee awards in contract disputes. See, e.g.,

Hernandez v. Quality Blacktop Servs., Inc., No. 18 CV 4862, 2021 WL 1207316, at *11

(E.D.N.Y. Mar. 30, 2021) (finding $350 per hour appropriate for an attorney with over 20 years'

experience in a case that involved a breach of contract claim); Annuity, Welfare &

Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers Loc.

15, 15A, 15C & 15D, AFL-CIO  v. Intercounty Paving Assocs. of New York, LLC, No. 19 CV

0733, 2020 WL 6826197, at *8 (E.D.N.Y. Nov. 20, 2020) (finding $390 per hour reasonable for

a law firm partner with over 20 years' experience in a dispute that included a breach of contract

claim); 1001 Games LLC v. Kernz, No. 19 CV 802, 2019 WL 2269966, at *2 (E.D.N.Y. May

28, 2019) (awarding attorney's fees at a rate of $450 an hour in a breach of contract case); Horti

Americas, LLC v. Steven Produce King, Inc., No. 16 CV 889, 2017 WL 3610519, at *4

(E.D.N.Y. Aug. 22, 2017) (awarding an attorney with "significant experience" $375 per hour in a

case that involved a contract dispute); LG Funding, LLC v. Fla. Tilt, Inc., No. 15 CV 631, 2015

WL 5038195, at *4 (E.D.N.Y. Aug. 26, 2015) (awarding the managing partner of a law firm with

five years' experience a rate of $250 per hour in a contract dispute); Leser v. U.S. Bank Nat'l

Assn., No. 09 CV 2362, 2013 WL 1952306, at *10–11 (E.D.N.Y. May 10, 2013) (reducing an

hourly rate from $790 to $425 in complex commercial matter involving breach of contract

claims, where counsel was a senior litigator at Reed Smith LLP with 28 years of experience).

Given the prevailing rates in this district and consistent with this Court's extensive experience awarding attorney's fees, this Court determines that counsel's request for $500 per hour is unreasonable, as it exceeds the upper bounds of the fees commanded in this district by even the most experienced litigators in complex contractual disputes. Thus, the Court respectfully recommends that counsel's fee be calculated at the rate of $400 per hour, which adequately reflects his experience, the work counsel performed, and the nature and complexity of this case.

6. <u>Defendant's Objections to Plaintiff's Request for Fees and Costs</u>

In opposing plaintiff's fee request, defendant raises a number of arguments to reduce the fees to which plaintiff's attorney claims he is entitled: 1) counsel's failure to maintain contemporaneous time records precludes plaintiff from recovering fees for the years 2017 and 2018; 2) counsel's hours should be reduced based on plaintiff's limited success; 3) the hours expended for the years 2019 and 2020 merit an across-the-board reduction; and finally, 4) plaintiff's request for costs should be denied because plaintiff failed to support the costs with invoices.

a) <u>Failure to Maintain Contemporaneous Time Records</u>

Defendant contends that plaintiff's counsel should not receive fees for the years 2017 and 2018 because he failed to maintain contemporaneous time records. (Def.'s Mem. at 10). Defendant notes that the fees requested for this period amount to a total of 168 hours. (<u>Id.</u> at 11). Defendant's tabulation of the hours plaintiff's counsel listed between January 2017 and March

2018 is wrong, however: plaintiff's counsel claims to have worked 213.5 hours during this period, not 168 hours.[19]

Under New Jersey law, the production of contemporaneously recorded time records is the "preferred" means of verifying hours worked by counsel. <u>Szczepanski v. Newcomb Med. Ctr., Inc.</u>, 141 N.J. 346, 367, 661 A.2d 1232, 1243-44 (1995) (citing <u>Webb v. Board of Educ.</u>, 471 U.S. 234, 238 n. 6 (1985)). Thus, reliance on reconstructed records is "strongly disfavored," and only appropriate in "exceptional circumstance[s]." <u>Id.</u> at 367-68; <u>Walker v. Giuffre</u>, 209 N.J. 124, 131, 35 A.3d 1177, 1181 (2012). In <u>Szczepanski v. Newcomb Medical Center, Inc.</u>, 141 N.J. at 367, 661 A.2d at 1243, plaintiff's counsel explained that, "[a]s a result of a personnel problem," counsel was unable to maintain contemporaneous records and was thus forced to reconstruct documentation for the missing periods. The Supreme Court of New Jersey held that counsel's representation was sufficient to conclude that "contemporaneous time records were maintained but were unavailable because of an exceptional circumstance." <u>Id.</u> at 141 N.J. at 368, 661 A.2d at 1244.

The law in New Jersey mirrors the law of this Circuit, under which "contemporaneous time records are a prerequisite for attorney's fees." <u>New York State Ass'n for Retarded Child., Inc. v. Carey</u>, 711 F.2d 1136, 1147 (2d Cir. 1983). Attorneys may deviate from this requirement "only in the rarest of cases . . . such as where the records were consumed by fire or rendered irretrievable by a computer malfunction." <u>Scott v. City of New York</u>, 626 F.3d 130, 133-34 (2d Cir. 2010).

---

[19] Defendant appears to have only calculated the time plaintiff's counsel reported between January 2017 and January 2018, even though plaintiff's counsel's reconstructed estimates range from January 2017 until March 2018.

In connection with his fee application, plaintiff's counsel in this case submitted a copy of the retainer[20] letter that he entered into with Ms. Culwick on April 28, 2015, along with contemporaneous time records showing the time spent on various tasks performed between April 30, 2015 and December 30, 2016.  He also submitted a month-by-month estimate of the time spent and the tasks performed for the period from January 2017 through March 2018.  Beginning in June 2019 and continuing until August 19, 2020, counsel provided contemporaneous time records for services performed in connection with the case.  No explanation was given for the use of estimated time in 2017 and 2018 until counsel submitted his Reply Declaration in response to defendant's challenge to his fees.  (Def.'s Mem. at 10 (quoting Szcepanski v. Newcomb Med. Center, Inc., 141 N.J. at 367-68)).

In response, plaintiff's counsel now explains that he does not have timekeeping software since most of his cases are taken on a contingency basis.  (Reply Decl. ¶ 4).  Rather, he manually documents his time spent on tasks while working.  (Id.)  Counsel appears to have deviated from this practice in this case, however, conceding that he "could not find any records for 2017 or 2018 on [his] computer."  (Id.)  Accordingly, counsel reconstructed the "approximate time" spent on various tasks during these years, noting that "the bulk of the work done in this matter" was done during this time, including attending a mediation, preparing the motion for summary judgment, and moving to dismiss the counterclaims.  (Id. ¶¶ 5, 6).  Thus, he contends that he has supplied sufficient detail to justify an award of fees for these years.

While counsel has tried to recreate the time spent on this matter during the 2017 to 2018 period, he failed to provide any basis upon which this Court could conclude that exceptional

---

[20] According to the retainer letter, counsel was to receive a $20,000 retainer fee.  (ECF No. 133-24).

circumstances exist warranting reliance on reconstructed records.  Counsel's perfunctory statement suggests that, rather than having suffered the loss of his records through unfortunate happenstance, he simply neglected to maintain his records during the contested period.  Thus, under New Jersey law, the Court concludes that the bulk of the 213.5 hours counsel alleges that he expended on this matter between 2017 and 2018 should be excluded from his attorney's fee award.  The only contemporaneous record of counsel's work during this period is an entry on the docket sheet that shows the amount of time that counsel spent appearing before the Court at a 48-minute hearing conducted on January 24, 2017.  (ECF No. 60).  Thus, as this time can be exactly calculated and independently corroborated by reference to the docket sheet, the Court finds that counsel is entitled to 48 minutes of the 213.5 hours alleged to have been incurred between 2017 and 2018.  The remaining 212 hours and 42 minutes should be excluded for lack of contemporaneous time records or other corroboration.

     b)  <u>Fees Should Be Limited to Plaintiff's Degree of Success</u>

Defendant challenges plaintiff's request for fees for the years 2015 and 2016 based on their allegedly limited relationship to plaintiff's success on her claims.  (Def.'s Mem. at 11).  Defendant concedes that the court has discretion to award the prevailing party some fees for the time spent on unsuccessful claims.  (<u>Id.</u>)  Defendant argues, however, that the record "offers a clear dividing line between the time the Estate's counsel spent exclusively on unsuccessful claims and time that he (arguably) spent prosecuting the successful breach of contract claim."  (<u>Id.</u> at 12).  According to defendant, everything counsel did up to the point that plaintiff sought an assignment from the decedent's father and filed the Second Amended Complaint "had no effect on the ultimate outcome."  (<u>Id.</u>)  Defendant argues that, had plaintiff moved for summary judgment prior to that point, she would have "lost on everything."  (<u>Id.</u>) (emphasis omitted).

Where a prevailing party has succeeded on only some of its claims, "the court should consider whether it is nevertheless reasonable to award legal fees for the time expended on the unsuccessful claim." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. at 387, 982 A.2d at 429. In determining whether to compensate counsel for work expended on unsuccessful claims, the court should consider the degree to which the unsuccessful claims are "related" to the successful claims, "either by a 'common core of facts' or 'related legal theories,'" as well as "the overall relief obtained." Singer v. State, 95 N.J. 487, 500, 472 A.2d 138, 144 (1984) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "If the results obtained are fully effective in vindicating plaintiff's rights, counsel should recover for all hours reasonably expended on the litigation." Id. Defendant is correct that whether to award fees for work spent on unsuccessful claims is a matter of discretion for the court determining the fee award. Empower Our Neighborhoods v. Guadagno, 453 N.J. Super. 565, 587, 183 A.3d 275, 288 (App. Div. 2018).

This aspect of New Jersey law parallels the law of this Circuit. Under Second Circuit precedent, where a plaintiff has succeeded on only some of his claims, his attorney should recover a fully compensatory fee if "the plaintiff's unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) (citing Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992)). In other words, the plaintiff's unsuccessful claims must share the same common core of facts as the plaintiff's successful claims. See DiSorbo v. City of Schenectady, No. 99 CV 1131, 2004 WL 115009, at *4 (N.D.N.Y. Jan. 9, 2004) (finding that although plaintiff "was unsuccessful on some of her claims," her attorneys should recover a fully compensatory fee because the "claims were all grounded in a common core of facts, and were based on related legal theories, such that it would have been difficult for Plaintiffs' attorneys to divide the hours expended on the litigation on a

claim-by-claim basis"); Broome v. Biondi, 17 F. Supp. 2d 230, 234 (S.D.N.Y. 1997) (finding that plaintiff's attorney should recover a fully compensatory fee in spite of an unsuccessful claim because "[t]he factual commonalities underlying" both of plaintiff's claims "render time spent on both claims virtually indivisible").

As noted in Judge Vitaliano's Memorandum and Order, plaintiff's claims sounded in contract, unjust enrichment and conversion. (Mem. and Order at 9). The breach of contract claim stemmed from the provision in the Property Settlement Agreement whereby defendant gave up her rights to claim the decedent's Annuity and pension benefits. (Id.) The conversion claim was based on the argument that defendant unlawfully converted the proceeds of the Annuity fund, and the unjust enrichment claim was similarly based upon defendant's deriving a benefit from the pension and Annuity fund in contravention of the agreement. (Id. at 10). Although the district court dismissed the conversion claim as barred by the statute of limitations and the unjust enrichment claim as precluded by the contract claim, there is no question that these two unsuccessful claims arose from the same "common core of facts" and circumstances as the breach-of-contract claim—namely, defendant's agreement not to claim the decedent's Annuity and pension benefits. Moreover, all three claims were predicated on "related legal theories" stemming from defendant claiming the decedent's benefits in breach of the divorce decree.

In addition, plaintiff obtained the entirety of the relief that she sought and vindicated her rights through summary judgment. That fact alone warrants awarding plaintiff's counsel fees without reduction for the inclusion of unsuccessful claims in the summary judgment motion. Singer v. State, 95 N.J. at 500, 472 A.2d at 144.

43

Moreover, defendant fails to explain why the time listed in counsel's 2015 and 2016 records was unnecessary.  Indeed, a review of the actual time sheets demonstrates that much of the time spent during the period from 2015 to 2016 included background work on the case, consultation with the client, research, efforts at settlement, preparing and negotiating a freeze of Annuity funds, subpoenas to the Union for information, and efforts relating to the preliminary injunction.  This time was not solely expended in pursuit of the unsuccessful conversion and unjust enrichment claims.  Rather, it was work that counsel would have needed to perform regardless of whether the only claim in the complaint was for breach of contract.

The Court finds no reason to reduce plaintiff's fees for the contested period between 2015 and 2016 simply because of plaintiff's lack of success on two of her claims, and respectfully recommends that counsel be awarded fees for the entirety of this period.

c)  Reduction of Hours for 2019 and 2020

Defendant's final argument in opposing plaintiff's request for fees is that the time plaintiff's counsel spent during the years 2019 and 2020 "is a shockingly high total" given that the case "hardly advanced" after Judge Vitaliano's ruling on the initial motion for summary judgment.  (Def.'s Mem. at 12).  Defendant urges the Court to reduce the hours requested for this period by 35%, from 114.25 hours to 74.3 hours.  (Id.)[21]

In determining whether an award is excessive, courts should consider whether the time spent by counsel on the case is equivalent to the time "competent counsel reasonably would have expended to achieve a comparable result."  Furst v. Einstein Moomjy, Inc., 182 N.J. at 22, 860 A.2d at 447 (quoting Rendine v. Pantzer, 141 N.J. at 336, 661 A.2d at 1227).  "[A] trial court

---

[21] Again, defendant's numbers are slightly off—plaintiff has only listed 114.15 hours during this contested period.

may exercise its discretion to exclude excessive hours from the lodestar calculation." Rendine v. Pantzer, 141 N.J. at 336, 661 A.2d at 1227.

The same law holds in federal court. A trial court may reduce the claimed hours and, accordingly, counsel's award, where proposed billing schedules are unsupported by evidence or objectively unreasonable. See Hensley v. Eckerhart, 461 U.S. at 433-434 (internal citations omitted) (explaining that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly. The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended'"). If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." Louis Vuitton Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v. City of New York, 2013 WL 5407221, at *8-9 (reducing fees because those requested for responding to motion papers were "excessive"); Jemine v. Dennis, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees by 10% because the "quality and complexity of the submissions and calculations" did not reflect the hours expended).

The Supreme Court has noted that "[c]ounsel for the prevailing party should make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary" from fee requests. Hensley v. Eckerhart, 461 U.S. at 434. "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary*." Id. (emphasis in the original). Accordingly, courts have applied a variety of across-the-board reductions to fee requests to correct for overbilling. See, e.g., Custodio v. Am. Chain Link & Const., Inc., No. 06 CV 7148, 2014 WL 116147, at *14 (S.D.N.Y. Jan. 13, 2014) (recommending "an across-the-board reduction of ten percent" where counsel recorded 5.3 hours for "responding to seven interrogatories" and 6.4 hours "to respond to 17 supplemental document demands"); Sheet Metal

Workers Nat. Pension Fund v. Evans, No. 12 CV 3049, 2014 WL 2600095, at *11 (E.D.N.Y.

June 11, 2014) (applying a 20% reduction for deficient billing records, particularly counsel's

"practice of billing .4 hours for tasks including the review of one-sentence docket entries and the

submission of one-paragraph correspondence"); Broome v. Biondi, 17 F. Supp. 2d at 235

("[c]onsidering the length of the litigation and the nature of the services performed, the time

billed by third-party defendant's nine-person legal team appears to be excessive . . . .Therefore,

there will be a 10% across the board reduction in the hours charged").

 In arguing for a 35% reduction in hours during this period, defendant cites the 2.5 hours

counsel spent drafting eight interrogatories and the 4.5 hours drafting ten document requests.

(Def.'s Mem. at 13 (citing Friedman Decl., Ex. D)).  Defendant also objects to the 1.25 hours

spent preparing form subpoenas, as well as the 13.75 hours spent researching and drafting the

supplemental memorandum of law in support of plaintiff's preliminary injunction motion.  (Id. at

13).  Defendant notes that although counsel spent 4.5 hours drafting plaintiff's February 28, 2020

pre-motion letter, the three-page letter "borrowed heavily" from plaintiff's prior submissions.

(Id.)  With respect to the 44 hours spent by counsel drafting the papers in connection with the

calculation of damages, interest, and attorneys' fees, defendant complains that these issues are

"straightforward and should be largely within the knowledge of a partner-level attorney."  (Id.

(citing Sheet Metal Workers Nat. Pension Fund v. Evans, No. 12 CV 3049, 2014 WL 2600095,

at *11 (E.D.N.Y. June 11, 2014)).

 In response, plaintiff's counsel contends that, first, the time spent opposing the motion for

reconsideration—time which defendant has not specifically challenged—was necessary due to

defendant's counsel bringing an "ill-advised" motion.  (Reply Mem. at 10).  Regarding his

efforts in relation to the memorandum of law in support of plaintiff's motion for a preliminary

injunction, plaintiff's counsel states that "it was important to [p]laintiff that the annuity proceeds remain restrained if at all possible" and thus "[a] good faith effort was made to find any legal precedent that could be offered to try to keep the injunction in place." (Reply Mem. at 10). Plaintiff also asserts that it was not unreasonable to spend more than 30 hours on the motion for summary judgment. (Id.)

The time that counsel claims to have spent on at least some of the tasks that he documents for this period appears to be somewhat excessive for an attorney of his level of experience. For example, counsel claims to have spent 13.95 hours[22] preparing a seven-page memorandum in further support of plaintiff's motion for a preliminary injunction. Six of those hours were dedicated to conducting legal research even though the document only contains four legal citations, one of which was cited in a prior submission. (Friedman Decl., Ex. D at 16-17) (citing Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308 (1999)). Similarly, the 44 hours that counsel claims to have spent working on his second motion for summary judgment appear high considering the errors and lack of clarity in describing the calculation of prejudgment interest and the need to address certain issues for the first time in the Reply Memorandum, particularly given counsel's decades of litigating contract cases. See Sheet Metal Workers Nat. Pension Fund v. Evans, 2014 WL 2600095, at *11 (finding counsel's documentation of 9.5 hours in relation to a second motion for summary judgment limited to the "narrow question of damages" excessive).

Although these are just two limited examples of time that appears to be excessive considering the tasks performed, the Court has reviewed plaintiff's counsel's submissions and

---

[22] Defendant attributes 13.75 hours to this motion, but the entries in the Friedman Declaration relating to this motion total 13.95 hours. (See ECF No. 120; Friedman Decl., Ex. D at 17-18).

the records in this case, and concludes that a reasonable, across-the board reduction of the time logged during the period 2019 to 2020 is warranted. Thus, the Court respectfully recommends that counsel's hours between 2019 and 2020 be reduced by 10% from 114.15 hours to 102.74 hours.

### 7. Attorney's Fees Award

Given the foregoing analysis, this Court respectfully recommends that plaintiff be awarded attorney's fees in the amount of $89,616. This figure represents 224.04 hours worked—the 448.15 hours that counsel claimed less the uncorroborated hours from 2017 and 2018 and the 10% reduction in hours between 2019 and 2020—at a rate of $400 per hour.

### 8. Costs

Plaintiff also seeks an award of costs in connection with this litigation. Under the applicable law, the allowance of costs is generally committed to the court's discretion. Fortugno Realty Co. v. Schiavone–Bonomo Corp., 39 N.J. 382, 396, 189 A.2d 7, 15 (1963); Hughes v. Eisner, 8 N.J. 228, 229, 84 A.2d 626, 626 (1951). Here, because the parties contracted to shift costs along with attorney's fees, plaintiff is entitled to recover reasonable costs from defendant.

In opposing plaintiff's requests, defendant notes that plaintiff failed to produce paid invoices for any of the items sought and thus, except for the $400 filing fee associated with the filing of this action, defendant opposes the request for costs. (Def.'s Mem. at 14). In his Reply Declaration, Mr. Friedman indicated that when he initially submitted his request for costs, he had a problem with his scanner and was unable to attach the invoices and receipts. (Reply Decl. ¶ 7). He has now attached that documentation as Exhibit G to his Reply Declaration, along with a bill from Mr. Delsanto who calculated the interest owed. (ECF No. 133-33). In total, plaintiff seeks $2,548.38 in costs. (Reply Decl. ¶ 8).

Plaintiff claims that the $2,548.38 in costs includes $400 in filing fees, of which the Court takes judicial notice; service of process fees consisting of $43.80 for service of the complaint by the Hunterdon County Sheriff; two $110.00 bills for the service of subpoenas, totaling $220; and two $75 bills for the service of subpoenas, totaling $150. (Reply Decl. ¶ 8). Plaintiff's claimed costs also include a $219.84 charge for the transcript of this Court's January 27, 2017 conference; a $165.54 charge for the transcript of the November 13, 2019 conference; and $1,350 charged by Mr. Delsanto for his work in connection with this matter. (Id.)

Plaintiff has submitted a receipt for the $400 filing fee; four invoices for service of process fees dated August 31, 2016, April 7, 2016, January 21, 2020, and January 15, 2020; and receipts for the payments made to the transcription service for the two court conferences. Finally, plaintiff has attached the $1,350 invoice from Mr. Delsanto. (Reply Decl., Ex. G).

Plaintiff has failed to provide an invoice or evidence in any way the claimed $43.80 process server charge. (Compare Reply Decl. ¶ 8, with Reply Decl., Ex. G). Thus, plaintiff cannot collect for that cost. Plaintiff is also mistaken in requesting $219.84 for fees paid to obtain the January 27, 2017 conference transcript, since the invoice reflects a payment of $218.94. (Compare Reply Decl. ¶ 8 with Reply Decl., Ex. G). Plaintiff is therefore only entitled to $218.94 for that transaction. Thus, excluding the costs relating to Mr. Delsanto, plaintiff is entitled to be reimbursed for $754.48 in costs.

While plaintiff has provided evidence that Mr. Delsanto charged her for his services through November 5, 2020 in the amount of $1,350, that cost includes Mr. Delsanto's having to redo his calculations to compute simple interest. The costs of Mr. Delsanto's mistaken initial calculations should not be passed on to the defendant. Since Mr. Delsanto's invoice is not itemized, the Court cannot ascertain the exact cost of his redundant work. Accordingly, the

Court recommends that plaintiff's request for compensation for Mr. Delsanto's fee be reduced by 15%, resulting in an award of $1,147.50 in costs for Mr. Delsanto's work.

In summary, it is respectfully recommended that plaintiff be awarded a total of $1,901.98 in costs.

<u>CONCLUSION</u>

Accordingly, the Court respectfully recommends that plaintiff's second motion for summary judgment be granted, and plaintiff be awarded $908,994.37: $574,901.24 for the Annuity disbursement plus $139,255.72 in accumulated interest on that amount; $103,319.43 for the pension benefit payments; attorney's fees in the amount of $89,616.00; and $1,901.98 in costs. Plaintiff is also entitled to any post-judgment interest that accrues under 28 U.S.C. § 1961.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

Dated: Brooklyn, New York
       September 9, 2021

                                    /s/ Cheryl L. Pollak
                                    Cheryl L. Pollak
                                    Chief United States Magistrate Judge
                                    Eastern District of New York