UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
VIVIENNE CULWICK, as Administratrix of the :
Estate of Steven Eliot Wood, :
 :
                                       Plaintiff, :   MEMORANDUM & ORDER
 :
                -against- :   1:15-cv-05868 (ENV) (CLP)
 :
ANDRAE E. WOOD, :
 :
                                  Defendant. :
-------------------------------------------------------------- x

VITALIANO, D.J.

      Plaintiff Vivienne Culwick, as administratrix of the estate of Steven Eliot Wood (the "Estate"), commenced this action on October 13, 2015, against defendant Andrae E. Wood, asserting claims for breach of contract, conversion, and unjust enrichment, and seeking a declaratory judgment and damages with respect to the distribution of proceeds from the decedent's annuity fund and pension plan.

      On September 9, 2021, following the Court's summary judgment award to Culwick on her breach of contract claim, which left unresolved the amount of damages owed to plaintiff, Chief Magistrate Judge Cheryl L. Pollak issued a Report and Recommendation ("R&R"), recommending that Culwick be awarded $908,994.37 in damages, pre-judgment interest, and attorney's fees and costs. Dkt. 134. Wood timely filed her objections to the R&R on September 23, 2021. Dkt. 135 ("Def.'s Objs."). Plaintiff timely filed her opposition to the objections, after seeking and receiving an extension to do so, on October 21, 2021. Dkt. 137 ("Pl.'s Reply"). For the reasons that follow, the R&R is adopted in its entirety as the opinion of the Court.

## Background

      The facts underlying this dispute are recited at length in the Court's order on the parties'

cross-motions for summary judgment, Dkt. No. 99, *see Culwick ex rel. Estate of Wood v. Wood*, 384 F. Supp. 3d 328 (E.D.N.Y. 2019) ("*Culwick I*"), and the familiarity of the parties with the facts found by the Court is presumed. But, recapitulating for purposes of context, the following highlights are noted here.

The late Steven Wood was entitled to participation in an annuity fund and pension plan by virtue of his membership in the International Alliance of Theatrical Stage Employees union. *Culwick I*, 384 F. Supp. 3d at 335. He named his then-wife, Andrae Wood,[1] as the primary beneficiary of the annuity and pension and named his father as the contingent beneficiary. *Id.* Upon their divorce, Steven and Andrae executed a property settlement agreement that required Andrae to waive any benefits from the annuity and pension. *Id.* at 335, 344–47. Yet, perhaps thinking time would stand still, Steven never updated his selection of the primary beneficiary listed on the plan documents to conform them to what was reflected in the separation agreement with Andrae. *Id.* at 355. Ultimately, following his death, the settlement agreement was dishonored by Andrae, and this litigation ensued. *Id.* at 336.

Standard of Review

In reviewing a report and recommendation of a magistrate judge, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Further, a district judge is required to "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010). "But, as to 'those portions of the report to which no timely objection has been

---

[1] Given the identity of the surnames of decedent Steven Wood and defendant Andrae Wood, they will, in this Memorandum & Order, be referenced by their first names only.

made, a district court need only satisfy itself that there is no clear error on the face of the record' in order to accept it." *Freedom Mortgage Corp. v. Powell*, No. 2:18-CV-4265 (ENV) (CLP), 2020 WL 4932145, at *1 (E.D.N.Y. Aug. 24, 2020) (quoting *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950, 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014)).

Discussion

The initial objection is one about process; it is directed at Judge Pollak's recommendation that Culwick be permitted to file a supplemental affidavit explaining the methodology she used to calculate her proposed award of pre-judgment interest, having failed to do so adequately, as Judge Pollak found, in her original moving affidavit. R&R at 21. With no express prohibition in the rules against granting such permission, Andrae, essentially, crafts some sort of equitable argument, unsupported by any case law, lamenting that such an opportunity only delays the entry of final judgment, which, in turn, allows plaintiff to reap the benefit of additional pre-judgment interest, and at a rate that is higher than the applicable post-judgment interest rate. *See* Def.'s Objs. at 8–9.[2]

The gripe about Judge Pollak giving plaintiff the opportunity to file a second-chance affidavit, however, is meritless. It is hardly novel to allow a plaintiff time to supplement or clarify her damages calculations.[3] *See, e.g.*, *Package Shop, Inc. v. Anheuser-Busch, Inc.*, 675 F. Supp. 894, 947 (D.N.J. 1987); *Trustees of Loc. 138, 138A & 138B Int'l Union of Operating Eng'rs Welfare Fund, Annuity Fund, Legal Fund, Vacation Fund, Apprenticeship Training Fund v.*

---

[2] Page citations to the parties' briefing are with reference to ECF pagination.
[3] Fits and starts are, like it or not, in the genetic material of litigation. To the extent that a party can make a good faith showing that her adversary is unfairly running the clock to inflict injury of some kind, relief can be sought under Rule 11 or otherwise. But a mere request for additional time to clarify a damages calculation, without any such indication of bad faith, does not constitute misconduct.

3

*Intercounty Paving Assocs. LLC*, No. 19-CV-3106 (RJD) (CLP), 2021 WL 1411142, at *4 n.6 (E.D.N.Y. Feb. 26, 2021).

Andrae uses the second-chance jab at plaintiff somewhat as a stalking horse, it seems, to get to her real objective, which is, as reflected in her objection, to reverse Judge Pollak's recommendation that there should be an award of pre-judgment interest. Def.'s Objs. at 9–12. This objection is totally devoid of merit. Bluntly, the Court had already determined that plaintiff is entitled to pre-judgment interest. *Culwick I*, 384 F. Supp. 3d at 350–51. Accordingly, upon *de novo* review, the Court sees no error in Judge Pollak's finding that plaintiff should be afforded the opportunity to refine her damages calculation. Consistent with Judge Pollak's recommendation, Culwick's request for pre-judgment interest on her award is denied without prejudice. Consequently, Culwick is directed to file, within 21 days of the entry of this Order on the docket, an affidavit rectifying the deficiencies in her original submission as stated in the Report & Recommendation.

Andrae is not any happier with the methodology for calculating Culwick's pre-judgment interest as described in the R&R. The focus of her ire is Judge Pollak's recommendation that New Jersey Court Rule 4:42-11(a)(iii) applies in calculating pre-judgment interest on the award of $103,319.43 to Culwick. Andrae contends that the rule has no application to the calculation of pre-judgment interest. Def.'s Objs. at 11–12. Even if it did, she argues, the judgment should be chopped into "separate[] mini-judgments," *id.* at 10, corresponding to the discrete monthly pension payments now found to have been the property of the estate when they were improperly paid to her. The animating force of her argument, of course, springs from the claimed applicability of

4

Rule 4:42-11(a)(iii) and its provision of an extra 2% in interest for judgments over $15,000.[4] *Id.* at 11–12. The overall judgment is for $103,319.43, well over the trigger amount, while the individual monthly "mini-judgments" that Andrae asked the Court to create would, obviously, each be under the trigger amount. *See id.* at 10–11.

First off, defendant's argument that Rule 4:42-11(a)(iii) does not apply to the calculation of pre-judgment interest is entirely off-base. Courts applying New Jersey law in award disputes routinely utilize Rule 4:42-11(a)(iii) in calculating pre-judgment interest. *See, e.g.*, *Clanton v. Nissan N. Am., Inc.*, No. A-1737-13T4, 2015 WL 5309457, at *12 (N.J. Super. Ct. App. Div. Sept. 10, 2015) ("[T]he two percent amount applies to pre-judgment interest."); *DialAmerica Mktg., Inc. v. KeySpan Energy Corp.*, 374 N.J. Super. 502, 507–08, 865 A.2d 728, 731–32 (App. Div. 2005) (collecting cases). Nor is there any authority in New Jersey law for splintering the overall award of damages into its constituent parts to avoid the application of Rule 4:42-11(a)(iii). Rather, case law dictates just the opposite. *See Waldron v. Johnson*, 368 N.J. Super. 348, 353–55, 845 A.2d 1287, 1290–91 (App. Div. 2004) (where two portions of damages awarded were each below the Special Civil Part's monetary limit, but the total damages were above it, "prejudgment interest should be calculated on the full . . . damage award" as provided by Rule 4:42-11(a)(iii)).

Moreover, all of Andrae's objections to the R&R's prescription of the methodology to be used in calculating the pre-judgment interest to be awarded on the pension benefits portion of the judgment, including the applicability of Rule 4:42-11(a)(iii), are just a regurgitation of the arguments she made to Judge Pollak, which Judge Pollak rejected in the R&R. Andrae, in her

---

[4] The monetary floor for New Jersey's Special Civil Part rule increased from $15,000 to $20,000 effective July 1, 2022. N.J. Ct. R. 6:1-1(c). The analysis and conclusion, however, remain the same.

objections, simply reiterates why she believes her position is correct, but provides no reasoning as to how Judge Pollak's rejection of it was erroneous. Such objections are not the sort of "specific written objections" demanded by the Federal Rules. Fed. R. Civ. P. 72(b)(2). In such circumstances, the applicable standard of review is clear error and not *de novo*. *See Sanders v. City of New York*, No. 12-CV-113 (PKC) (LB), 2015 WL 1469506, at *1 (E.D.N.Y. Mar. 30, 2015). As for these recommendations of Judge Pollak, though, it does not matter which standard of review the Court applies: the putative objections are without basis and are overruled. These recommendations and their accompanying report are adopted as the opinion of the Court.

Andrae's next objection meets the same fate. In this objection, she assigns error for the R&R's failure to toll the running of pre-judgment interest during the period from July 6, 2016 until May 21, 2020 because of an order barring her from expending annuity funds. Def.'s Objs. at 12–14. In rejecting the argument, Judge Pollak concluded that there were no exceptional circumstances warranting tolling. *See* R&R at 23. Although Andrae's stated objection to this ruling simply rehashes the argument already rejected by the magistrate judge, it again does not matter which standard of review is used. As Judge Pollak found, the recommendation not to toll the running of pre-judgment interest on this element of damages is well supported by New Jersey law, which makes plain that whether Andrae could access and expend annuity funds for this purpose is irrelevant since she was obligated by contract to make the payments when due without any contingencies. *See* R&R at 22 (citing *W.R. Huff Asset Mgmt. Co. v. William Soroka 1989 Trust*, No. CIV A 04-3093 (KSH), 2009 WL 2436692, at *5 (D.N.J. Aug. 6, 2009)). Consequently, whether reviewing under the clear error standard or the *de novo* standard, the objection to the R&R is overruled. This portion of the R&R is therefore also adopted as the opinion of the Court.

At any rate, this objection is, transparently, an attack on the Court's conclusion at summary

judgment that Culwick had succeeded to rights under the marital agreement. On this point, it is in the guise of an objection that seeks to avoid application of a fee-shifting provision in Andrae's marital agreement with Steven.[5]  Specifically, Andrae objects to the R&R's findings that the decedent's father was an intended third-party beneficiary of that provision and argues that the bundle of rights Culwick received from decedent's father by their separate agreement excluded rights under the fee-shifting provision of the marital agreement. She argues that Culwick has no right to seek attorney fees as a result of this litigation, notwithstanding that this litigation results from what the litigation has determined was Andrae's breach of the marital agreement. *See* Def.'s Objs. at 14–15.

Even assuming defendant's backdoor attack on the essential holding awarding relief to Culwick were not just a rehash of her argument before Judge Pollak, the objection would not stand because the R&R on this point is in total harmony, both in letter and spirit, with the Court's summary judgment ruling finding Steven's father to be a third-party beneficiary of the marital property settlement. *Culwick I*, 384 F. Supp. 3d at 349–50. The Court found Steven's father had third-party rights under the property agreement between Steven and Andrae, which Steven's father later formally assigned to Culwick.

Retreating from her broadside attack on the finding that Steven's father was a third-party beneficiary of the property settlement, Andrae next contends that the third-party beneficiary status should be cabined to the provision in the agreement pertaining to Andrae's waiver of rights to decedent's annuity and pension benefits. Her argument is without basis either in fact or law. The

---

[5] The fee-shifting mechanism in the Woods' marital agreement provides that, should either party breach the property settlement agreement, the offended party, should they bring an action to enforce its terms, shall be entitled to apply for reimbursement by the offending party for attorney's fees. *See* R&R at 27.

Court in no way trimmed the bounds of the third-party beneficiary status it found had been created. In fact, just the opposite: the Court expressly concluded that the decedent's father was an intended third-party beneficiary of the entire agreement. *See id.* In any event, even if Culwick's third party beneficiary status received by assignment from Steven's father was cabined to the provision related to defendant's waiver of her rights to Steven's annuity and pension benefits, the fee-shifting provision, as its contractual context makes evident, is an essential adjunct protecting the contractual rights of all parties under the agreement, including Steven's rights and those of his third-party beneficiary father under that very provision. To the extent that defendant has even interposed a proper objection on this ground, it is overruled, and the R&R in this respect is adopted as the opinion of the Court.

Andrae raises another meritless objection by contesting the R&R's recommendation that the Court award plaintiff attorney's fees in the amount of $89,616, which reflects Judge Pollak's recommended 20% reduction of the $500 per hour rate sought by plaintiff's counsel. Andrae would have the Court go further and approve an hourly rate of no more than $350. Def.'s Objs. at 16–20. But the recommended $400 hourly rate falls within the range of rates typically afforded to attorneys practicing in this district with comparable credentials to plaintiff's counsel. *See Argonaut Ins. Co. v. Manetta Enters., Inc.*, No. 19-CV-482 (PKC) (RLM), 2021 WL 170832, at *3 (E.D.N.Y. Jan. 19, 2021) (noting that a $400 hourly rate is at the "low end" of rates typical within this district for attorneys with 40 years of experience); *Capital One, N.A. v. Auto Gallery Motors, LLC*, No. 16-CV-6534 (PKC) (SIL), 2020 WL 423422, at *3–4 (E.D.N.Y. Jan. 27, 2020) (awarding fees at a rate of $450 for senior partners with more than 20 years of experience and $400 for junior partners); *1001 Games LLC v. Kernz*, No. 19-CV-802 (BMC), 2019 WL 2269966, at *2 (E.D.N.Y. May 28, 2019) (similar); *U.S. Bank Nat'l Ass'n v. Brooklyn Motor Cars, Inc.*, No. 18-

CV-2609 (CBA) (PK), 2019 WL 1370696, at *8 (E.D.N.Y. Mar. 4, 2019) (awarding an hourly rate of $450 to partners with over 20 years of experience, where the plaintiff had requested rates of $510 and $556 per hour for those partners), *report and recommendation adopted*, 2019 WL 1367285 (E.D.N.Y. Mar. 26, 2019).  The cases Andrae cites recommending lower figures do not upset Judge Pollak's analysis.  Upon *de novo* review, the $400 hourly rate recommended in the R&R is appropriate, and it is adopted is the rate applicable to plaintiff's request for attorney's fees.

Lastly, Andrae rehashes her argument that the plaintiff counsel's hours were excessive and should be reduced by no less than 35%, as opposed to the 10% reduction recommended by Judge Pollak.  Def.'s Objs. at 21–23.  However, she raises no new arguments to refute the R&R's reasoning.  In fact, the citations she makes to the allegedly excessive billing and to case law allegedly supporting her position are nearly identical to those she made in her Memorandum in Opposition to the Motion for Summary Judgment.  *Compare* Mem. in Opp. to Mot. for Summ. J., Dkt. 130-30, at 12–14, *with* Def.'s Objs. at 21–23.  As such, the Court, employing the applicable clear error standard of review, finds Judge Pollak's analysis to be well reasoned, correct, and free of any clear error.  The R&R on this point is adopted as the opinion of the Court.

## Conclusion

For the foregoing reasons, Chief Judge Pollak's report and recommendation is adopted in its entirety as the opinion of the Court.

As a result, plaintiff is awarded $908,994.37 in damages, fees, and costs:  $574,901.24 for the annuity disbursement plus $139,255.72 in accumulated interest on that amount, $103,319.43 for the pension benefit payments, attorney's fees in the amount of $89,616.00, and $1,901.98 in costs. Plaintiff is also entitled to any post-judgment interest that accrues after entry of judgment.

With respect to pre-judgment interest on the pension benefit payments, however, plaintiff

shall have 21 days from the entry of this Order on the docket to cure the deficiencies as noted in, and in the manner prescribed by, the R&R.

    So Ordered.

Dated: Brooklyn, New York
       October 12, 2022

                                          s/ENV
                              ERIC N. VITALIANO
                              United States District Judge